# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

ANGIE KIELISZEWSKI AND
LYNNANN WARE, individually and on
behalf of all others similarly situated,

                    Plaintiffs,

    v.

RELIAS LLC,

                Defendant.

Case No. 5:25-cv-00043-M-RN

## DEFENDANT RELIAS LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(1) MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ............................................................................................... 1

FACTS AND PROCEDURAL HISTORY ............................................................. 3

   I.   Plaintiffs, Two Pennsylvania Nurses, Filed Suit In North Carolina to
      Construct a Class Against Relias. ............................................................. 3

     A.  Angie Kieliszewski. ........................................................................ 3

     B.  LynnAnn Ware. ............................................................................ 4

     C.  Relias Operates Nurse.com. ............................................................ 5

STANDARD OF REVIEW ................................................................................ 8

JUDICIAL NOTICE ......................................................................................... 8

ARGUMENT ................................................................................................... 10

   I.   Plaintiffs Angie Kieliszewsi And LynnAnn Ware Do Not, Themselves, Plead
      A Personal Stake Sufficient To Create An Injury In Fact. ........................ 12

   II.  Plaintiffs Have No Privacy Interest In Viewing Publicly Available
      Professional Continuing Education Courses ............................................ 15

   III.  Plaintiffs' Publication Of Their Registered Nurse Status Defeats Their
      Privacy Rights In State-Mandated Continuing Education Courses. ........... 17

   IV.  Relias Did Not Disclose Plaintiffs' Continuing Education Courses Or
      Facebook IDs To Meta ................................................................... 17

CONCLUSION ............................................................................................... 21

Case 5:25-cv-00043-M-RN    Document 18    Filed 04/08/25    Page 2 of 28

TABLE OF AUTHORITIES

Page(s)

**Cases**

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
637 F.3d 435 (4th Cir. 2011)...................................................................... 8, 9

*Edwards v. Learfield Commc'ns*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)...................................................... 20

*Eichenberger v. ESPN*,
876 F.3d 979 (9th Cir. 2017)............................................................*Passim*

*Evans v. B.F. Perkins Co.*,
166 F.3d 642 (4th Cir. 1999)........................................................................ 8

*In re Facebook, Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...................................................................... 19

*Fernandez v. RentGrow*,
116 F.4th 288 (4th Cir. 2024) .................................................................... 12

*Frawley v. Nexstar Media Grp.*,
2024 WL 3798073 (N.D. Tex. July 22, 2024), *rep. and rec. adopted*, No. 3:23-CV-
2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) ............................... 9

*Garza v. Alamo Intermediate II Holdings*,
No. 3:23-cv-5849, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024) ............ 16

*Golden v. NBCUniversal Media*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)........................................................ 20

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004)........................................................................ 9

*Hoge v. VSS-Southern Theaters*,
No. 1:23-cv-346, 2024 WL 4547208 (M.D.N.C. Sept. 10, 2024)........ 10, 16

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)........................................................ 21

*Katz v. United States*,
389 U.S. 347 (1967).................................................................................... 17

iii

*Keogh v. Meta Platforms,*
    680 F. Supp. 3d 601 (D.S.C. 2023) ........................................................... 9

*Kerns v. United States,*
    585 F.3d 187 (4th Cir. 2009) ................................................................... 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................. 17

*In re Nickelodeon Consumer Privacy Litig.,*
    827 F.3d 262 (3d Cir. 2016) ................................................. 10, 15, 19, 20

*Osheske v. Silver Cinemas Acquisition Co.,*
    700 F. Supp. 3d 921 (C.D. Cal. 2023) .................................................... 16

*Paris Adult Theatre I v. Slaton,*
    413 U.S. 49 (1973) ............................................................................... 16

*Philips v. Pitt Cty. Mem'l Hosp.,*
    572 F.3d 176 (4th Cir. 2009) ................................................................... 9

*Richmond, Fredericksburg & Potomac R. Co. v. United States,*
    945 F.2d 765 (4th Cir. 1991) ................................................................... 8

*Rodriguez v. FastMed Urgent Care, P.C.,*
    741 F. Supp. 3d 352 (E.D.N.C. 2024) ...................................................... 9

*Spokeo v. Robins,*
    578 U.S. 330 (2016) ............................................................................. 12

*Sterk v. Redbox Automated Retail,*
    770 F.3d 618 (7th Cir. 2014) ................................................................. 14

*Tatum v. X Corp.,*
    733 F. Supp. 3d 453 (E.D.N.C. 2024) ...................................................... 9

*TransUnion v. Ramirez,*
    594 U.S. 413 (2021) ....................................................................*Passim*

*Yershov v. Gannett Satellite Info. Network,*
    820 F.3d 482 (1st Cir. 2016) ................................................................. 19

**Statutes**

18 U.S.C. § 2710 ..................................................................................... 10

iv

U.S. Const. Art. III ............................................................................*Passim*

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................... 1, 8, 11

Fed. R. Civ. P. 12(h)(3) ............................................................................ 8

**Regulations**

49 Pa. Code § 21.131 ............................................................................ 11, 15

**Other Authorities**

134 Cong. Rec. S5399 (May 10, 1988) ...................................................... 10

The Doctrine of Standing as an Essential Element of the Separation of Powers,
     17 Suffolk U. L. Rev. 881 (1983)............................................................ 12

# INTRODUCTION

Defendant Relias LLC ("Relias") moves to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because there is no cognizable case or controversy under Article III. In a nearly 40-page first amended complaint (the "Complaint"), Plaintiffs Angie Kieliszewski and LynnAnn Ware never once offer a cognizable injury. Compl., [D.E. 9]. The two Pennsylvania nurses complain that they accessed audio-visual material on Relias' website for their continuing education requirements and that a line of code disclosed their Facebook ID ("FID") to Meta "in conjunction with the title and URL of the specific prerecorded video materials." Compl. ¶ 5. The Complaint goes on for another 100+ allegations, but at the end, one question remains unanswered: What is *their* injury?

They ask for statutory damages, but the Supreme Court has already said that is not enough. *TransUnion v. Ramirez*, 594 U.S. 413, 428 (2021). Copious ink is spilled about an alleged nationwide class, but at the end of the day, Plaintiffs do not allege any injury that *they* suffered. Nor can they trace any nonexistent injury to Relias. Plaintiffs' own tortured theory of the case, articulated in an unsealed, public filing, is that they were injured because a website communicated a line of code associating their public Facebook profile with continuing education videos. Here is the example they colorfully excerpt:

1



That is the alleged violation. They don't allege they lost their jobs as nurses because they watched a video. This line of code didn't put their social security numbers out into the world for fraudsters to exploit. They don't even allege they lost followers on social media because of the videos they viewed as nurses on Nurse.com. There is no Article III injury, alleged or otherwise. Plaintiffs do not have a case or controversy.

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every

2

legal question." *TransUnion*, 594 U.S. at 423. Plaintiffs' theory of the case has multiple statutory flaws that will be addressed at an appropriate juncture if necessary. Relias also puts forth and preserves a suite of standing arguments that all independently allow for dismissal. But at the end of the day, Plaintiffs do not have a personal stake in this matter.

There is no case. There is no controversy. This Court's work is done.

## FACTS AND PROCEDURAL HISTORY

### I.   Plaintiffs, Two Pennsylvania Nurses, Filed Suit In North Carolina to Construct a Class Against Relias.

Plaintiff Kieliszewski initiated this action on January 30, 2025. [D.E. 1]. Plaintiff Ware filed her own complaint on January 31, 2025, but soon thereafter joined this case. [D.E. 6, 7]. Plaintiffs filed their First Amended Complaint on February 24, 2025. [D.E. 9]. This Court granted Relias' Motion for Extension of Time, allowing it until April 8, 2025 to respond. [D.E. 11, 12].

### A. Angie Kieliszewski.

Plaintiff Kieliszewski is a Pennsylvania resident and Meta user with a unique Facebook profile page and Facebook ID. Compl. ¶¶ 11-12. Kieliszewski publicly represents herself as a "Registered Nurse" and/or "RN" on her Facebook, LinkedIn, and Instagram profiles. Kieliszewski Facebook Profile, *available at* https://www.facebook.com/angie.kieliszewski (last visited April 8, 2025); Kieliszewski LinkedIn Profile, *available at* https://www.linkedin.com/in/angie-kieliszewski-

22ab86a1/ (last visited April 8, 2025); Kieliszewski Instagram Profile, *available at* https://www.instagram.com/27killerbunnies/ (last visited April 8, 2025).[1]

Kieliszewski allegedly registered for an account and "became a consumer" of Nurse.com "on or about April 12, 2024." Compl. ¶ 12. She allegedly "requested or obtained . . . stand-alone courses and the Unlimited CE subscription" from Relias "during the relevant period." Compl. ¶ 16. She claims that she accessed these materials on a web browser on her "internet-connected" device and accessed the Nurse.com while "logged into her Facebook account." Compl. ¶¶ 16-17. Kieliszewski does not allege what device she used, what website she accessed, or when she allegedly obtained Relias' courses. Kieliszewski also does not allege any interaction with Freecme.com. *See* Compl., at Intro. & n.1, ¶¶ 12, 37-38, 77.

### B. LynnAnn Ware.

Ware is a Pennsylvania resident and Meta user with a unique Facebook profile page and FID. Compl. ¶¶ 21-22. Ware publicly represents herself as a "Registered Nurse" and/or "RN" on her Instagram and X profiles. Ware Instagram Profile, *available at* https://www.instagram.com/lynnrn01/ (last visited April 8, 2025); Ware X Profile, *available at* https://x.com/LynnAnnWareRN (last visited April 8, 2025).

Ware allegedly registered for an account and "became a consumer" of Nurse.com "on or about December 2018." Compl. ¶ 22. Although she alleges that she "requested or obtained" a course called "Heroin: The Opioid Crisis" from Relias, she

---

[1] As explained below, the Court should take judicial notice of admissions Plaintiffs make on their publicly available social media pages.

does not identify the date she requested this course. Compl. ¶ 26. She claims that she accessed the foregoing course on a web browser on her "internet-connected" device while "logged into her Facebook account." Compl. ¶¶ 26-27. Ware does not allege the specific device that she used. Ware also does not allege any interaction with Freecme.com. *See* Compl., at Intro. & n.1, ¶¶ 22, 37-38, 77.

### C. Relias Operates Nurse.com.

Relias is a leading provider of education, training and workforce management solutions for healthcare organizations. Declaration of Wes Vaux ("Decl.") ¶ 4 (attached as Exhibit A). Relias operates the website Nurse.com. Decl. ¶ 5; Compl. ¶¶ 31-32.[2] Nurse.com provides a wide range of information and services to healthcare professionals, including:

- State Certification information (resource on state nurse credential requirements)[3];

- Career advancement information (articles, job postings, and research content)[4];

- Community interaction (hosting live community events with nurses, and providing an online discussion forum that allows nursing professionals to communicate directly)[5]; and

---

[2] The Court should also take judicial notice of Nurse.com.

[3] https://www.nurse.com/state-nurse-ce-requirements (certification requirements) (last visited April 8, 2025).

[4] *See, e.g.*, https://www.nurse.com/jobs/browse/ (job posts) (last visited April 8, 2025).; https://www.nurse.com/blog/category/nursing-career-and-jobs/ (career blog) (last visited April 8, 2025).

[5] *See, e.g.*, https://www.nurse.com/community/(communuty interaction) (last visited April 8, 2025).; https://www.nurse.com/nurses-week/ (live events) (last visited April 8, 2025).

5

- Educational content (articles, blog posts, podcasts about various healthcare issues, and online learning courses (including continuing education courses))[6].

Decl. ¶ 5. Thus, educational content is one of many offerings by Nurse.com. Nurse.com's online educational courses are relatively new (launched in late-2023) and represent a subset of the broader education content Relias provides. Decl. ¶¶ 5-6; Compl. ¶ 31 (Relias is a "leading online educational provider of educational material" which "include[s] prerecorded audio visual materials"). The online education courses are self-paced, online modules that rely primarily on power-point presentations and other displays of text.[7] Nurse.com offers "over one thousand online continuing education courses," Compl. ¶ 37, but only a portion contain a video component. Decl. ¶¶ 8, 10 n.2. And the video component often does not have the same name as the overall course. Decl. ¶ 10 n.2.

Plaintiffs allege that Relias installed Meta's proprietary Pixel software on Nurse.com. Compl. ¶ 36. They say that when Plaintiffs accessed that website, the Pixel captured certain information about their continuing education videos and also instructed their browser to send Plaintiffs' FIDs—embedded in a "c_user cookie"—to Meta. Compl. ¶¶ 18, 28, 60-67, 69-74, 79. Plaintiffs contend that the video information

---

[6] *See, e.g.*, https://www.nurse.com/blog/category/nursing-education/ (educations blogs and podcasts) (last visited April 8, 2025).; https://www.nurse.com/nursing-ce-courses (online courses) (last visited April 8, 2025).

[7] https://www.nurse.com/ce/certification-review (last visited April 8, 2025). *See also* Decl. ¶ 8.

6

and the FIDs were sent among a host of alpha-numeric codes in the same "network transaction," and that the FID could be used to locate Plaintiffs' publicly available Facebook profiles, which contain their names, pictures, and other information. Compl. ¶¶ 5-6, 15, 25, 61, 68, 71-74 & Figs. 3-a, 3-b, 3-c. Plaintiffs claim they never consented to the disclosure. Compl. ¶¶ 19, 29.

To purchase an online education course on Nurse.com, a user must (a) create an account, (b) find a course, (c) add the course to their shopping cart, and (d) go through a check-out process. Decl. ¶ 9; Compl. ¶¶ 33-34, 36. Nurse.com does **not** transmit purchased course information to Meta, including course titles or the titles of video content contained in the courses that contain such content. Decl. ¶¶ 10-11. The Meta Pixel only collects general browsing activity that occurs prior to a purchase. Decl. ¶ 10; Compl. at Fig. 3-a; 3-b; 3-c.

And after purchase, Nurse.com does not transmit information to Meta about the user watching or otherwise interacting with the purchased course. Decl. ¶ 11. The purchased courses launch on an entirely separate website (reliaslearning.com) that does not use the Meta Pixel *at all*. Decl. ¶ 11

Similarly, Plaintiffs also allege that "upon information and belief," and based on Meta's suggestion that "website owners should use [Meta's Conversions API technology] alongside the Pixel," Relias "may have also configured a Meta product called Conversions API . . . to disclose consumers' PII to Meta as well." Compl. ¶¶ 100, 105; *accord* Compl. ¶ 8. They do not allege that Relias actually used Conversions

7

API or that Plaintiffs' personally identifiable information ("PII") was transmitted through it.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action any time the court determines it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A "defendant may challenge subject matter jurisdiction in one of two ways"—facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). For a facial attack, the court accepts all material allegations in the complaint as true and construes them in favor of the party asserting jurisdiction. *Id.* But in a factual challenge, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The court may also "consider a document submitted by a moving party if it is integral to the complaint and there is no dispute about the document's authenticity." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011) (cleaned up). If the undisputed, material jurisdictional facts show that the moving party is entitled to prevail as a matter of law, the Court should dismiss for lack of subject matter jurisdiction. *Id.*

## JUDICIAL NOTICE

The Court should take judicial notice of Plaintiffs' publicly available social media profiles and the Nurse.com website. As explained, on a motion to dismiss, the

8

court "may consider a document submitted by a moving party if it is integral to the complaint and there is no dispute about the document's authenticity." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. Moreover, the court may take judicial notice of publicly available information. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (noting that the court "may properly take judicial notice of matters of public record"); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 362 (E.D.N.C. 2024) ("[A] court may take judicial notice of public records."). That includes information "from publicly available websites." *Tatum v. X Corp.*, 733 F. Supp. 3d 453, 459 (E.D.N.C. 2024) (taking judicial notice of X.com's terms of service) (collecting cases); *see Keogh v. Meta Platforms,* 680 F. Supp. 3d 601, 606 n. 2 (D.S.C. 2023) (taking judicial notice of Facebook's website and policies).

Here, the contents of Nurse.com are incorporated in the Complaint and are integral of Plaintiffs' VPPA claim. *See Frawley v. Nexstar Media Grp.,* No. 3:23-CV-2197-L, 2024 WL 3798073, at *3 (N.D. Tex. July 22, 2024), *rep. and rec. adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024) (taking judicial notice of website in VPPA motion to dismiss). The Complaint also specifically references Plaintiffs' Facebook profiles and acknowledges that those profiles contain "publicly available information specifically and uniquely identifying" Plaintiffs. Compl. ¶¶ 15, 25. The Court may properly consider the information contained on those publicly available websites.

9

## ARGUMENT

In 1988, Congress enacted the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 ("VPPA"), following disclosure of Supreme Court Justice nominee Robert Bork's video rentals. Congress's response to the Bork disclosures was "quite narrow"—promulgation of a "context specific" statute that covers "only the choices of movies that we may watch with our family in our own homes." Compl. ¶¶ 44-45 (citing 134 Cong. Rec. S5399 (May 10, 1988)); *see In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) ("Congress's purpose in passing the [VPPA] was quite narrow"); *Eichenberger v. ESPN*, 876 F.3d 979, 983 (9th Cir. 2017) (noting that VPPA is "context-specific"). The plain language, statutory structure—and, for that matter, legislative history—did not contemplate the extension or overreach advanced by Plaintiffs here: taking the VPPA out of home movie-watching and applying it to a dedicated workforce management and educational content provider. Another federal court in this state has rejected a similar attempt at such overreach. *See Hoge v. VSS-Southern Theaters*, No. 1:23-cv-346, 2024 WL 4547208 (M.D.N.C. Sept. 10, 2024) (holding on a Rule 12 motion that VPPA does not apply to movie theaters). The Court should do the same.

This is especially so where the Plaintiffs have no cognizable injury and lack Article III standing. Plaintiffs each publicly advertise that they are Pennsylvania-based "Registered Nurse[s]." *See* Compl. ¶¶ 11, 21; Kieliszewski LinkedIn Profile *available at* https://www.linkedin.com/in/angie-kieliszewski-22ab86a1/ (last visited April 8, 2025); Ware Instagram Profile, *available at* https://www.instagram.com/lynnrn01/ (last visited April 8, 2025). Their Complaint

10

has nothing to do with movies they ordered or watched in the privacy of their homes. Rather, their VPPA claims are based on Relias allegedly disclosing Plaintiffs' continuing education courses—which Pennsylvania nurses are required to complete to maintain their public status as a "Registered Nurse," 49 Pa. Code § 21.131—and Facebook ID numbers via a ubiquitous online marketing tool, the Meta Pixel, allegedly deployed on www.nurse.com. Alleged disclosure of professional continuing education information is an untenable leap from the VPPA's statutory text, history, and purpose. This Court should not be the first to jump.

Plaintiffs' Complaint fails under Rule 12(b)(1) for lack of Article III standing, for four independent reasons:

1. The Complaint does not allege any actual harm or injury resulting from the alleged disclosure of state-mandated continuing education courses, *see infra* Argument, Part I;

2. Nursing continuing education courses—a public requirement to maintain Registered Nurse status in Pennsylvania—do not implicate the narrow and context specific privacy interest embodied in the VPPA, *see infra* Argument, Part II;

3. Plaintiffs have no privacy interest in the alleged information because they publicly hold themselves out as Registered Nurses, which conveys that they completed Pennsylvania's publicly mandated continuing education requirements, *see infra* Argument, Part III; and

4. Any purported harm is not traceable to Relias because Relias never disclosed to Meta the continuing education courses Plaintiffs obtained or viewed, or their FIDs, *see infra* Argument, Part IV.

The Court should dismiss this case.

11

# I. Plaintiffs Angie Kieliszewski And LynnAnn Ware Do Not, Themselves, Plead A Personal Stake Sufficient To Create An Injury In Fact.

The "judicial Power of the United States" is not boundless. U.S. Const. Art. III. "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo v. Robins*, 578 U.S. 330, 337 (2016) (quotations omitted). Cases and controversies, in turn, require a personal stake. "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion*, 594 U.S. at 423 (quoting Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). Plaintiffs in particular must show that they have suffered an injury in fact that is fairly traceable to the defendant's conduct and that can be redressed by the court. *Id.* And at the pleading stage, plaintiffs bear the burden of alleging facts that meet each of those elements.

Almost a decade ago, the Supreme Court held that alleging a statutory violation is not enough to establish Article III standing. *Spokeo*, 578 U.S. at 341. The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). Thus, asserting a VPPA claim does not absolve Plaintiffs of their obligation to "allege and show" that they suffered a distinct, concrete harm because of the alleged statutory violation. *See, e.g.*, *Fernandez v. RentGrow*, 116 F.4th 288, 294-95 (4th Cir. 2024) ("Article III standing requires a

12

concrete injury even in the context of a statutory violation."). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427 (emphasis in original).

Plaintiffs allege that they "requested or obtained Defendant's prerecorded audio visual material" from Relias through Nurse.com, that Relias disclosed "the titles of the prerecorded audio visual materials" to Meta without their consent, and that the disclosure "violated [their] rights under the VPPA and invaded [their] statutorily conferred right to keep such information (which bears on [their] personal affairs and concerns) private." Compl. ¶¶ 16-20, 26-30. Those allegations fail to show that Plaintiffs suffered a concrete harm as a result of that alleged disclosure.

At bottom, Plaintiffs allege that a person with sufficient technical expertise to access a "network transmission" made using Meta's proprietary Pixel software and enough sleuthing to isolate a "c_user cookie," could identify an unlabeled series of numbers as a Facebook ID and find Plaintiffs' already public Facebook profiles. Compl. ¶¶ 5-6, 18, 28 & Figs. 3-a, 3-b, 3-c. From there, Plaintiffs allege that the sleuth could somehow learn that Plaintiffs watched continuing education videos required by law to maintain the nursing licenses that Plaintiffs publicly tout on their social media accounts. Nowhere do Plaintiffs allege that they have as a result lost their jobs, been subjected to harassment or exploitation, or suffered any other concrete harm. They simply complain that a website and their browser communicated lines of code that,

together, associated their public Facebook profile with continuing education videos. *See* Compl. ¶ 5. Without more, that is no injury.

A handful of courts have preliminarily concluded that the disclosure of an individual's video-viewing habits confers Article III standing for a VPPA claim. *See, e.g.*, *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 623 (7th Cir. 2014) (finding that disclosure of video viewing history was a concrete injury for Article III's purposes); *Eichenberger*, 876 F.3d at 982-84 (determining that the VPPA "protects concrete interests" in privacy that are injured by disclosure). But the Fourth Circuit has not. And these holdings are inconsistent with Supreme Court precedent "reject[ing] the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426.

More to the point, those cases do not address *this* Complaint and *these* Plaintiffs. The only compensatory damages that plaintiffs seek are statutory damages. *See* Compl. ¶ 125 & Prayer for Relief. That is not enough to confer standing. The Court in *TransUnion* held that statutory damages, standing alone, fall flat on their face. 495 U.S. at 427–29.

Plaintiffs allege technical violations of the VPPA. They do not allege personal, concrete, or individualized harm. "No concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

Plaintiffs' allegations regarding freecme.com are even more starkly deficient. Although the Complaint includes references to the website freecme.com, Plaintiffs

14

fail to allege any interaction with it. *See* Compl., at Intro. & n.1, ¶¶ 12, 22, 37-38, 77. Because they do not allege obtaining or viewing any private video content from that website, or any disclosure of their PII resulting therefrom, Plaintiffs have no plausible claim to any injury relating to it, and the Court should dismiss.

Finally, Plaintiffs allege that "upon information and belief," and based on Meta's suggestion that "website owners should use [Meta's Conversions API technology] alongside the Pixel," Defendant "may have also configured a Meta product called Conversions API . . . to disclose consumers' PII to Meta as well." Compl. ¶¶ 100, 105; *accord* Compl. ¶ 8. They do not allege that Relias actually used Conversions API or that Plaintiffs' PII was transmitted through it. Accordingly, they cannot show an injury-in-fact related to Conversions API.

In short, Plaintiffs do not meet Article III's injury-in-fact requirement because they have not pleaded that they suffered "any harm at all" caused by Relias' conduct. *TransUnion*, 594 U.S. at 440. The Court should dismiss.

## II. Plaintiffs Have No Privacy Interest In Viewing Publicly Available Professional Continuing Education Courses.

Professional continuing education course information does not implicate the VPPA's "narrow" and "context-specific" privacy right in movies viewed in the privacy of one's home. *Eichenberger*, 876 F.3d at 983; *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 284. To the contrary, the continuing education courses that Pennsylvania law requires Plaintiffs to take relate only to their public and professional status as Registered Nurses. *See* 49 Pa. Code § 21.131.

15

The Middle District of North Carolina explained VPPA's narrow purpose in *Hoge*, 2024 WL 4547208, *2.[8] The *Hoge* court followed *Osheske v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921, 926-27 n.4 (C.D. Cal. 2023) and *Garza v. Alamo Intermediate II Holdings*, No. 3:23-cv-5849, 2024 WL 1171737 (N.D. Cal. Mar. 19, 2024), and held that disclosure of a movie that an individual would view in a public theater did not violate the VPPA because theaters do not "deliver" movies.

The *Osheske* court drew additional support for the dichotomy between public and private movie viewership in the legislative record, and concluded that the VPPA's content-specific scope was not implicated by "public acts like attending a theater." 700 F. Supp. 3d at 927 (citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973)).

The VPPA's narrow and context-specific focus is not implicated by all movie watching activities. Rather, that right is confined to disclosure of information that might reveal information about our private lives. See Compl. ¶¶ 20, 30. Disclosing that Plaintiffs obtained or viewed videos that the public already knows they are required to obtain and view does not confer Article III standing. That is all the more true when Plaintiffs complain of associations between a public website and a public profile that they chose to disclose.

---

[8] The Court's order does not discuss the plaintiff's underlying theory, but the complaint alleges the VPPA claim based on the theater's alleged use of Meta Pixel on its website. *See Hoge*, No. 1:23-CV-346, [D.E. 1, ¶ 5] (M.D.N.C. April 26, 2023).

### III.  Plaintiffs' Publication Of Their Registered Nurse Status Defeats Their Privacy Rights In State-Mandated Continuing Education Courses.

Indeed, Plaintiffs' publication of their Registered Nurse status on Instagram, X, and LinkedIn defeats any alleged privacy interest. Individuals' willful, public disclosure of information or documents can destroy their privacy interests in those information or documents. *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) (announcing the two-prong test that "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable").

Here, Plaintiffs have publicly posted on multiple websites that they are Registered Nurses licensed in Pennsylvania. By publicly disclosing this information, Plaintiffs have also publicly disclosed that they have completed their required 30 hours of continuing education. There is no privacy right tied to viewing publicly mandated continuing education courses.

### IV.  Relias Did Not Disclose Plaintiffs' Continuing Education Courses Or Facebook IDs To Meta.

Finally, Plaintiffs lack standing because Relias did not share their video purchase or viewing information, or their Facebook IDs, with Meta. As such, any alleged injury would not be traceable to Relias.

To have standing, whatever injury a plaintiff allegedly suffered "must be fairly traceable to the challenged conduct of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations omitted). Stated differently, "there must be a causal connection between the injury and the conduct complained of." *Id.* When the

17

alleged injury is "the result of the independent action of some third party not before the court," a plaintiff lacks standing. *Id.* (alterations omitted).

Plaintiffs argue that Relias uses the Meta Pixel to disclose the specific title of video content they request or purchase, along with the URL where such content is available for purchase. Compl. ¶ 65. This is incorrect as a jurisdictional matter. Relias does *not* allow Meta Pixel to collect information—including titles—of courses purchased on Nurse.com. Decl. ¶¶ 10-11. After purchase, Relias does not transmit information to Meta about the user's interaction with that course (*i.e.*, that the user watched that course). Decl. ¶ 11. Courses are launched on a separate website that does not deploy the Pixel at all. Decl. ¶ 11.

Accordingly, Figures 3-a, 3-b, and 3-c of the Complaint are not representative of video material that was actually obtained, purchased, or viewed on Nurse.com. These figures represent a website visitor's general browsing activity prior to purchase. Decl. ¶ 10. At most, that may show that the user browsed on the course's description page. Decl. ¶ 10. It may even show what course the user placed in her cart. *See* Compl., at Fig. 3-b. But as stated above, what courses, if any, were actually purchased, let alone whether those courses contained a video component, is not transmitted to Meta. Decl. ¶¶ 10-11 & n.2. Meta is never informed of (a) whether a course that a user browses upon contains video content, or (b) if it does contain video content, the title of that video component. Decl. ¶ 10 n.2.

Relias also did not disclose Plaintiffs' Facebook IDs. Indeed, Plaintiffs do not allege that Relias even had access to their FIDs. *See* Compl. ¶¶ 61-63, 66. To the

18

contrary, Plaintiffs allege that the FID is stored in a cookie in their browsers, and that the Pixel instructs their browsers—not Relias or its website—to send the FID to Meta. Compl. ¶¶ 63, 66. "Because the browser encounters the Pixel and downloads its instructions, it necessarily transmits this information to Meta." Compl. ¶ 63; *accord* Compl. ¶ 66 ("[A] user's browser . . . share[s] the user's . . . PII with Meta."); *see In re Facebook, Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) ("[C]ookies [are] small text files stored on the user's device. When a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID." (quotation omitted)). Plaintiffs cannot sue Relias for conduct they allege it never committed.

In any event, even assuming Relias disclosed both Plaintiffs' FIDs and their video history, Plaintiffs *still* have not demonstrated any injury that is fairly traceable to that conduct. The purpose of the VPPA is "to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 284, 290; *accord Eichenberger*, 876 F.3d at 985; *but see Yershov v. Gannett Satellite Info. Network*, 820 F.3d 482, 486 (1st Cir. 2016) (interpreting "personally identifiable information" more broadly to encompass "information reasonably and foreseeably likely to reveal which . . . videos [a customer] has obtained").

The FIDs allegedly disclosed here do not meet that narrow definition. Plaintiffs allege that an ordinary person can easily use a FID to find a person's Facebook

19

account, and that the accounts at issue here contained PII. Compl. ¶¶ 5-6, 15, 25, 68. But Relias did not disclose Plaintiffs' FIDs in the abstract (even assuming it did at all). Instead, the FIDs were allegedly embedded in "c_user cookie[s]," which were in turn embedded in a "network transmission" made using the Meta Pixel. Compl. ¶¶ 5, 18, 28. Nowhere in the Complaint do Plaintiffs allege that an ordinary person without Facebook's technical abilities would know what a "c_user cookie" is, let alone how to access the network transmission through which it was sent using Facebook's proprietary software, and then scour whatever code the transmission contained to isolate the c_user cookie. *See* Compl., at Figs. 3-a, 3-b, 3-c. Nor do Plaintiffs allege that an ordinary person—even if capable of making it to the c_user cookie—could identify the "unique sequence of numbers" as a FID that they could then extract and use in a browser search to find a Facebook profile. Compl. ¶ 6. It is not even labeled as such in the transmission. *See* Compl., at Fig. 3-c (showing that the alleged FID is labeled "c_user"). Instead, to an ordinary person, "a digital code in a cookie file would likely be of little help in trying to identify an actual person." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 279 n.105, 283, 290 (concluding that "static digital identifiers" like "IP addresses, browser fingerprints, unique device ID numbers, and cookie identifiers" do not constitute PII); *see Edwards v. Learfield Commc'ns*, 697 F. Supp. 3d 1297, 1307-08 (N.D. Fla. 2023); *contra Golden v. NBCUniversal Media*, 688 F. Supp. 3d 150, 157-60 (S.D.N.Y. 2023) (collecting cases).

More to the point, even if someone could sift through and isolate that information, Plaintiffs still do not adequately allege that an ordinary person could

20

then connect the FID with any video Plaintiffs actually requested or obtained. *See In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2015). More likely, the ordinary person viewing this code would perceive the "id" number in the first line to be the Facebook ID. Evidently, it is not. *See* Compl. ¶ 73 & Fig. 3-c (showing the "id" and "c_user" as two different numbers). Similarly, although a title of *something* may appear in the URL disclosed via the Pixel, the URL does not identify the title as being a *video*. *See* Compl., at Figs. 3-a, 3-b, 3-c.

That Meta may be able to combine the data is of no consequence. *See* Compl. ¶¶ 61, 68, 70, 73. Courts interpreting whether information is identifying must do so "without regard to its recipient's capabilities." *Eichenberger*, 876 F.3d at 985.

Consequently, Plaintiffs fail to adequately allege that personally identifiable information—as that term is understood in the VPPA—was disclosed by Relias, such that whatever injury Plaintiffs suffered is fairly traceable to it. Plaintiffs lack standing.

In short, Plaintiffs lack Article III standing and the Court should dismiss for lack of subject matter jurisdiction.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint with prejudice for lack of subject matter jurisdiction.

Respectfully submitted, this 8th day of April, 2025.

CLARK HILL, LLP

Christopher B. Clare
North Carolina Bar No. 39582
1001 Pennsylvania Ave. NW
Suite 1300 South
Washington, D.C. 20004
Telephone: (202) 572-8671
cclare@clarkhill.com

Chirag H. Patel*
130 E Randolph St, Ste. 3900
Chicago, IL 60601
cpatel@clarkhill.com

Myriah V. Jaworski*
600 West Broadway, Suite 500
San Diego, CA 92101
mjaworski@clarkhill.com

*pro hac vice forthcoming

SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN,
L.L.P.

*/s/ H. Hunter Bruton*
H. Hunter Bruton
North Carolina State Bar No. 50601
David A. Senter, Jr.
North Carolina State Bar No. 44782
C. Michael Anderson
North Carolina State Bar No. 42646

Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:        (919) 821-1220
Facsimile:        (919) 821-6800
hbruton@smithlaw.com
dsenter@smithlaw.com
manderson@smithlaw.com

*Counsel for Relias LLC*

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2025, I electronically filed the above with the Clerk of Court using the CM/ECF System, which will provide electronic copies to counsel of record.

*/s/ H. Hunter Bruton*