# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | |
|---|---|
| ANGIE KIELISZEWSKI, AND LYNNANN WARE, individually and on behalf of all others similarly situated, <br><br>            Plaintiffs, <br><br>     v. <br><br> RELIAS LLC, <br><br>            Defendant. | Case No. 5:25-cv-00043-M-RN |

## PLAINTIFFS' OPPOSITION TO DEFENDANT RELIAS LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 3

III.   LEGAL STANDARD ................................................................................................ 4

IV.    ARGUMENT ............................................................................................................. 5

       A.     The Court Should Disregard Defendant's Factual Assertions ............................ 6

       B.     Violations of the VPPA Cause Concrete Injury ................................................ 9

       C.     The VPPA Protects Plaintiffs' Privacy Regardless of Their Employment Status
              or the Subject Matter of Videos They Selected .................................................. 15

       D.     Defendant Actually Disclosed Plaintiffs' PII. .................................................... 18

V.     CONCLUSION ......................................................................................................... 23

CERTIFICATION OF WORD LIMIT .................................................................................. 24

CERTIFICATE

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Bain*
    697 F.2d 1213 (4th Cir. 1982) ...................................................................... 4,8,19

*Aldana v. Gamestop, Inc.*
    No. 22-cv-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .................................... 22

*Austin-Spearman v. AMC Network Ent. LLC*
    98 F.Supp.3d 662 (S.D.N.Y. 2015) ...................................................................... 2

*Barnett v. United States*
    650 F.Supp.3d 412 (D.S.C. 2023), *reconsideration denied*, No. 2:20-cv-0251-DCN, 2023 WL
    7013501 (D.S.C. Oct. 25, 2023, and *aff'd*, 132 F.4th 299 (4th Cir. 2025) ............................. 5

*Bosiger v. U.S. Airways*
    510 F.3d 442 (4th Cir. 2007) ......................................................................... 8

*Bradacs v. Haley*
    58 F.Supp.3d 499 (D.S.C. 2014) ....................................................................... 5

*Cantu v. Tapestry, Inc.*
    No. 22-CV-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ............................. 19

*Collins v. Toledo Blade*
    720 F.Supp.3d 543 (N.D. Ohio 2024) ................................................................. 20

*Davison v. Loudoun Cnty. Bd. of Supervisors*
    No. 1:16CV932 (JCC/IDD), 2016 WL 4801617 (E.D. Va. Sept. 14, 2016) ............................ 7

*Eichenberger v. ESPN, Inc.*
    876 F.3d 979 (9th Cir. 2017) .................................................................. *passim*

*Evans v. United States*
    105 F.4th 606 (4th Cir. 2024) ......................................................................... 4

*Feldman v. Star Trib. Media Co. LLC*
    659 F.Supp.3d 1006 (D. Minn. 2023) ................................................................. 22

*Gay v. Wall*
    761 F.2d 175 (4th Cir. 1985) ......................................................................... 8

*Golden v NBCUniversal Media, LLC*
    688 F.Supp.3d 150 (S.D.N.Y. Aug. 23, 2023) ................................................. 13, 21, 23

Case 5:25-cv-00043-M-RN     Document 22     Filed 04/29/25     Page 3 of 31

*Hall v. Virginia*
    385 F.3d 421 (4th Cir. 2004) ............................................................................... 7

*Hernandez v. Noom, Inc.*
    No. 1:23-cv-00641-JRR, 2023 WL 8934019 (D. Md. Dec. 27, 2023) ................................ 13

*Hill v. AQ Textiles LLC*
    582 F.Supp.3d 297 (M.D.N.C. 2022) ..................................................................... 15

*Hoge v. VSS-S Theaters LLC*
    No. 1:23-cv-346, 2024 WL 4547208 (M.D.N.C. Sept. 10, 2024) ..................................... 17

*In re Facebook Internet Tracking Litig*
    956 F.3d 589 (9th Cir. 2020) ............................................................................. 21

*In re Hulu Priv. Litig.*
    No. C 11–03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................................... 21

*In re Lilley*
    No. 10-81078C-13D, 2011 WL 1428089 (Bankr. M.D.N.C. Apr. 13, 2011) ......................... 15

*In re Nickelodeon Consumer Priv. Litig.*
    827 F.3d 262 (3d Cir. 2016) ........................................................................... 9,17,18

*In re Vizio, Inc., Consumer Priv. Litig.*
    238 F.Supp.3d 1204 (C.D. Cal. 2017) ................................................................ 14,19

*Innova Hospital San Antonio, Limited Partnership v. Blue Cross & Blue Shield of Georgia, Inc.,*
    892 F.3d 719 (5th Cir. 2018) ............................................................................. 15

*Jackson v. Fandom, Inc.*
    No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ................................ 21

*Kareem v. Haspel*
    986 F.3d 859 (D.C. Cir. 2021) ............................................................................ 15

*Kerns v. United States*
    585 F.3d 187 (4th Cir. 2009) ......................................................................... 4,8,20

*Krakauer v. Dish Network, LLC*
    925 F.3d 643 (4th Cir. 2019) ............................................................................. 13

*Lee v. Springer Nature Am., Inc.,*
    -- F.Supp.3d ----, 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) ...................................... 12,14

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ......................................................................................... 9

iv

*Martin v. Meredith Corp.*
  657 F.Supp.3d 277 (S.D.N.Y. 2023) ................................................................... 20

*Mims v. Kemp*
  516 F.2d 21 (4th Cir. 1975) ............................................................................... 4

*MouseBelt Labs Pte. Ltd. v. Armstrong*
  674 F.Supp.3d 728 (N.D. Cal. 2023) .................................................................. 7

*Mystic Retreat Med. Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*
  615 F.Supp.3d 379 (M.D.N.C. 2022) ............................................................... 15

*Penegar v. Liberty Mut. Ins. Co.*
  115 F.4th 294 (4th Cir. 2024) ............................................................................ 9

*Perry v. Cable News Network, Inc.*
  854 F.3d 1336 (11th Cir. 2017) .......................................................................... 9

*Phillips v. LCI Int'l, Inc.*
  190 F.3d 609 (4th Cir. 1999) .............................................................................. 5

*Prince v. Johnson Health Tech Trading, Inc.*
  653 F.Supp.3d 307 (W.D. Va. 2023) ................................................................ 14

*Ross v. Bank of Am., N.A.*
  524 F.3d 217 (2d Cir. 2008) ............................................................................... 9

*Salazar v. Nat'l Basketball Ass'n*
  118 F.4th 533 (2d Cir. 2024) .............................................................................. 9

*Salazar v. Paramount Global*
  683 F.Supp.3d 727 (M.D. Tenn. Jul. 18, 2023) ............................................... 13

*Salazar v. Paramount Global*
  133 F.4th 642 (6th Cir. 2025) ............................................................................. 1

*Sellers v. Bleacher Rep., Inc.*
  No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ............... 22

*Sol v. M&T Bank*
  713 F.Supp.3d 89 (D. Md. 2024) ....................................................................... 8

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) .......................................................................................... 11

*Sterk v. Redbox Automated Retail, LLC*
  770 F.3d 618 (7th Cir. 2014) ............................................................................. 9

*Sterling v. Feek*
　No. 3:22-CV-05250, 2022 WL 16699191 (W.D. Wash. Nov. 3, 2022) ................................ 7

*TransUnion LLC v. Ramirez*
　594 U.S. 413 (2021) ........................................................................................................ 11,18

*United States ex rel. Sheldon v. Forest Lab'vs, LLC*
　754 F.Supp.3d 615 (D. Md. 2024) ...................................................................................... 5

*United States v. Charlotte-Mecklenburg Hosp. Auth.*
　248 F.Supp.3d 720 (W.D.N.C. 2017) ............................................................................... 5,7

*U.S. Dep't of Justice v. Rprtrs Comm. For Freedom of Press*
　489 U.S. 749 (1989) ......................................................................................................... 13

*Williamson v. Tucker*
　645 F.2d 404 (5th Cir. 1981) ............................................................................................. 4

*Yershov v. Gannet Satellite Info. Network, Inc.*
　204 F.Supp.3d 353 (D. Mass. 2016) ............................................................................... 2,14

**U.S.Code**

18 USC § 2710 ..................................................................................................................... 1

18 U.S.C. § 2710(a)(1) ........................................................................................................ 5

18 U.S.C. § 2710(a)(2) ........................................................................................................ 1

18 U.S.C. § 2710(a)(3) ................................................................................................... 5, 20

18 U.S.C. § 2710(b)(1) ..................................................................................................... 1,5

**Fed. R.**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1,4,8

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 8,19

Fed. R. Civ. P 56(c) ............................................................................................................ 8

Fed. R. Evid. 201(b) ........................................................................................................ 5,7

**Pa. Code**

49 Pa. Code § 21.131 ........................................................................................................ 17

## Other Authorities

Restatement (Second) of Torts § 652B ....................................................................... 13

S. Rᴇᴘ. 100-599 .............................................................................................. 1,11,14

S. Rᴇᴘ. 112-258 ................................................................................................. 16

## I. INTRODUCTION

Plaintiffs Kieliszewski and Ware ("Plaintiffs") bring this action to vindicate violations of their privacy rights protected by the Video Privacy Protection Act, 18 USC § 2710 ("VPPA" or "Act"), which Defendant Relias LLC ("Defendant" or "Relias") breached by disclosing information identifying (i) Plaintiffs and (ii) the audio visual materials they requested or obtained from Defendant's websites to Meta Platforms, Inc. ("Meta"). Disclosures of this nature are clearly prohibited by the VPPA—federal law enacted to "extend privacy protection" to the audio visual materials Americans request or obtain. S. REP. 100-599, at *2. The publication of Judge Bork's video rental history by the Washington City Paper clearly illustrates that disclosures of this kind violate consumers' privacy.

But Relias did *just that* when it disclosed Plaintiffs' and the class members' requests for audio visual materials from Relias's websites to Meta. Such disclosures were not made for any legitimate purposes,[1] rather, Relias callously disclosed this information so Meta could target Plaintiffs and the class members with advertisements—including advertisements for Relias. And yet, Relias claims, under Fed. R. Civ. P. 12(b)(1) Plaintiffs cannot have suffered injury that is either "concrete" or "traceable" to its conduct. ECF No. 18 ("MTD"). Not so: The consistent and voluminous weight of authority makes clear that any nonconsensual disclosure of a consumer's identity alongside the specific video material or services they requested or obtained is an actionable violation of the Act. *See* 18 USC § 2710(b)(1); and *Salazar v. Paramount Global*, 133 F.4th 642, 647 n.5 (6th Cir. 2025). As discussed below, Defendant's arguments and factual assertions are not proper under 12(b)(1), but even if they were, none are sufficient to avoid liability under the VPPA.

---

[1] *See* 18 U.S.C. § 2710(a)(2).

As a threshold matter: Relias's MTD masquerades as a 12(b)(1) factual attack on subject matter jurisdiction (which ostensibly permits it to introduce factual matter), while the actual arguments it makes function to attack the *merits* of Plaintiffs' allegations.[2] Defendant argues Plaintiffs "have no privacy interest" in publicly available videos, but relies on cases analyzing whether movie theaters qualify as video tape service providers ("VTSP") under the VPPA, clearly attempting to avoid liability by asking to be treated like movie theaters – a 12(b)(6) argument. MTD at 15-17. And it argues it did not actually transmit personally identifiable information ("PII") to Meta – another merits argument. MTD at 17-21. The Court should see through this attempt, recognize that the jurisdiction and merits issues are deeply intertwined, and reject the factual matter Defendant requests the Court to consider.

Relias first argues—contrary to <u>every federal circuit and more than twenty federal district courts to have considered the issue</u>[3]—that the VPPA cannot give rise to a concrete injury. But the language of the VPPA, all legislative history supporting the VPPA, *and TransUnion itself* make clear that statutory violations with a close relationship to a common law analog of "public disclosure of private facts" are sufficient to establish a concrete injury to support a VPPA claim.

Next, Relias argues its disclosure of Plaintiffs' PII could not have caused them concrete injury because (i) there is no privacy interest in publicly available continuing education and (ii) their publication of their employment status would defeat any such privacy interest. However, Relias is a VTSP (its reliance on movie theater cases is misplaced where Defendant delivered video

---

[2] For clarity: Defendant does not assert facts in support of its first jurisdictional allegations of injury under the VPPA that a concrete injury requires additional consequences or harm to be actionable pursuant to *TransUnion*. MTD 12-15.

[3] *See Paramount*, 133 F.4th at 647 n.5 (collecting cases to support the finding that "every other circuit to consider the issue agrees that a similar alleged violation of the VPPA confers standing."); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F.Supp.3d 662, 666 (S.D.N.Y. 2015) (finding Article III standing for VPPA claim); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F.Supp.3d 353, 361 (D. Mass. 2016) (collecting cases for same).

2

content to Plaintiffs' web browsers), and Plaintiffs did not watch audio visual materials in public. In addition, the express language supporting the 2012 amendment to the VPPA demonstrates individuals can publicize the exact video materials they request or obtain on social media and still retain their privacy rights under the VPPA.

Last: Defendant makes a direct attack on the factual (not jurisdictional) allegations in Plaintiffs' FAC. Plaintiffs *clearly and thoroughly* illustrate Relias' transmissions of information identifying the audio visual material they requested or obtained from its web properties and draw a clear link between such activities and their privacy harms. Defendant cannot simply run away from its own decisions to configure advertising surveillance technology on its websites.

Plaintiffs make straightforward allegations of Defendant's violation of their privacy rights protected by the VPPA. This Court should deny its motion.

## II.    BACKGROUND

On January 30, 2025, Plaintiff Angie Kieliszewski ("Plaintiff Kieliszewski") commenced this action in the Western Division of this Court to redress Defendant's violations of consumers' privacy rights as established by the VPPA. ECF No. 1. On January 31, 2025, Plaintiff Lynnann Ware ("Plaintiff Ware") commenced an action in the Eastern Division against Defendant for the same or similar violations, and on February 24, 2025, Plaintiffs filed a First Amended Complaint ("FAC"). ECF No. 9 ("FAC"). The FAC alleges that Defendant violated its consumers' privacy by disclosing to a third party, Meta Platforms, Inc., information identifying them as having requested or obtained audio visual materials from Defendant's websites, https://nurse.com/ and https://www.freecme.com/. *See id.*, ¶¶ 1, 20, 30. It alleges that Defendant systematically disclosed its consumers' "personally identifiable information" in two ways: First, Defendant configured the Meta Pixel on its websites, which disclosed every video Defendant's subscribers requested or obtained to Meta. *See id.*, ¶ 67. Second, Defendant likely configured the Conversions API

3

("CAPI") to disclose records identifying the videos its subscribers request or obtain directly from its server, as opposed to through its pixel. *See id.*, ¶¶ 100, 102.

On April 8, 2025, Defendant moved to dismiss the FAC.

## III.    LEGAL STANDARD

**Rule 12(b)(1):**        A motion to dismiss pursuant to 12(b)(1) challenges this Court's subject matter jurisdiction over Plaintiffs' Complaint. Fed. R. Civ. P. 12(b)(1). Plaintiffs bear the burden of establishing this Court's jurisdiction, *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), which Defendant's Motion attacks by asserting facts contradicting the Complaint's allegations. A factual attack on a Complaint's jurisdictional allegations contends such allegations are not true and permits the Court to "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.*" Adams*, 697 F.2d at 1219. The Court must "weigh[] the evidence to determine its jurisdiction" and "may consider evidence by affidavit, depositions, or live testimony without converting the proceeding to one for summary judgment." *Id*. (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

However, "a district court should assume jurisdiction and assess the merits of the claim when the relevant facts—for jurisdictional and merits purposes—are inextricably intertwined." *Evans v. United States*, 105 F.4th 606, 614 (4th Cir. 2024) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). When jurisdictional and merits facts are so intertwined, "a presumption of truthfulness should attach to the plaintiff's allegations." *Kerns*, 585 F.3d at 193. A defendant's challenge in such circumstances is to *both* the Court's jurisdiction and the merits of a plaintiff's claims, which necessitates "procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id*.[4]

---

[4] *Kerns* relies on *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) in reaching this conclusion, which "aptly described the underlying rationale for this approach," when it argued for

**Judicial Notice**:        Ordinarily, a court cannot consider extrinsic materials outside of the complaint when deciding a motion to dismiss. However, a court may do so when the authenticity of the material is not questioned and the material is integral to the claims or defenses or incorporated into the complaint by reference. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). A court "may judicially notice a fact that is not subject to reasonable dispute" because the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, judicial notice does not permit the Court to accept as true the contents of the facts judicially noticed, only that such documents published the facts asserted. *Barnett v. United States*, 650 F.Supp.3d 412, 441 (D.S.C. 2023), *reconsideration denied*, No. 2:20-cv-0251-DCN, 2023 WL 7013501 (D.S.C. Oct. 25, 2023, and *aff'd*, 132 F.4th 299 (4th Cir. 2025) (quoting *Bradacs v. Haley*, 58 F.Supp.3d 499, 511 (D.S.C. 2014)). *See also United States ex rel. Sheldon v. Forest Lab'vs, LLC*, 754 F.Supp.3d 615, 640 (D. Md. 2024).[5]

## IV.    ARGUMENT

Under the VPPA, a VTSP becomes liable to its consumers when it "knowingly discloses, to any person, personally identifiable information concerning any consumer[.]" 18 U.S.C. § 2710(b)(1). A consumer is "any renter, purchaser, or subscriber of goods and services from a video tape service provider" and "'personally identifiable information,' includes information which identifies a [consumer] as having requested or obtained specific video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(1) and (3). In other words, Congress expressly codified that any renter, purchaser, or subscriber of goods and services from a VTSP possesses a privacy right in

---

"a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim" in response to a defendant's attempts to "indirectly argu[e] the merits in the context of federal jurisdiction." 585 F.3d at 193.

[5] This Court has discretion whether to even consider such additional materials. *United States v. Charlotte-Mecklenburg Hosp. Auth.*, 248 F.Supp.3d 720, 726 (W.D.N.C. 2017).

any specific video material or services they request or obtain from such VTSP. Without dispute from Defendant as to the merits of their allegations, the FAC alleges Plaintiffs are consumers of Defendant, FAC, ¶¶ 2-3, 12-13, 22-23, 31-32, 80, 118, 119, Defendant is a VTSP, FAC, ¶¶ 31-39, and Defendant knowingly disclosed to Meta information identifying Plaintiffs' and the class members as having requested audio visual material from Defendant's websites, www.nurse.com and www.freecme.com. FAC, § V. Finally, Plaintiffs make very clear allegations that Defendant's conduct here constitutes an invasion of their privacy. FAC ¶¶ 20, 30.

Contrary to Defendant's arguments, (i) it is well established that a VTSP's disclosure of video-watching behavior causes concrete injury, (ii) nothing in the text of the VPPA or within any of its several exceptions authorizing disclosure of PII suggests its privacy protections can be waived by a consumer who has publicized her professional career or job title, and (iii) Plaintiffs' FAC illustrates for the Court how the pixel on Defendant's websites caused disclosures of personally identifiable information to Meta. The FAC establishes that Plaintiffs have standing to assert their VPPA claims against Defendant under Article III.

**A. The Court Should Disregard Defendant's Factual Assertions**

The Court should disregard (i) Defendant's request for judicial notice of Plaintiffs' social media profiles and (ii) the Declaration of Wes Vaux. Defendant requests that this court take judicial notice of Plaintiffs' social media profiles (e.g., Facebook, Linkedin, Instagram), *see* MTD at 3-5, because the FAC "specifically references Plaintiffs' Facebook profiles and acknowledges that those profiles contain 'publicly available information specifically and uniquely identifying' Plaintiffs." MTD at 9. However, the FAC does not mention LinkedIn or Instagram at all. Defendant instead avers that statements made on such public webpages confirm Plaintiffs are registered nurses, facts which ostensibly support its argument that they lack injury-in-fact. MTD at 15-17.

But Plaintiffs' social media profiles are not the kind of material fit to be judicially noticed under Federal Rule of Evidence 201: Plaintiffs' social media profiles are neither "generally known within the trial court's territorial jurisdiction" nor capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Sources that possess such "accuracy" are government statistical websites and the like, *see Hall v. Virginia*, 385 F.3d 421 n.3 (4th Cir. 2004), not websites that publish unverified personal statements and opinions, like social media profiles. *See Charlotte-Mecklenburg*, 248 F.Supp.3d at 726. Even if the court were to consider the profiles, it cannot take judicial notice of the truth of statements, it can only take notice that Plaintiffs' accounts exists, not the information appearing thereupon. *See e.g., Davison v. Loudoun Cnty. Bd. of Supervisors*, No. 1:16CV932 (JCC/IDD), 2016 WL 4801617, at *4 (E.D. Va. Sept. 14, 2016) (refusing to take judicial notice of screenshots of the County's Facebook page); *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F.Supp.3d 728, 735 n.2 (N.D. Cal. 2023) (taking judicial notice of the existence of a profile but refusing to consider any statement therein); *Sterling v. Feek*, No. 3:22-CV-05250, 2022 WL 16699191, at *8 (W.D. Wash. Nov. 3, 2022) ("The Court declines at this stage to take judicial notice of social media profiles").

Nor are Plaintiffs' entire social media profiles sufficiently "integral" to Plaintiffs' allegations to be incorporated by reference. In support of their allegations that Defendant's transmission of their Facebook IDs makes them identifiable, Plaintiffs referenced their Facebook profiles (not other social media profiles) to explain their profiles include identifying information, FAC, ¶¶ 15, 25, and to allege they were logged into Facebook while viewing video material on the websites (causing transmission of their FIDs). FAC, ¶¶ 17, 27. Such allegations are far afield from Defendant's attempts to use additional material on multiple social media profiles to support its "jurisdictional" defense.

The Declaration of Wes Vaux is similarly improper. Pursuant to 12(b)(1), Relias argues it demonstrates Plaintiffs did not suffer injury-in-fact, but its true purpose is to assert facts supporting 12(b)(6) arguments concerning the merits of Plaintiffs' claims. The Court should not welcome such tactics: At best, jurisdictional issues are "too intertwined" with the merits in this case, or at worst, this is a clear attempt to assert facts under the guise that they support jurisdictional (and not merits) arguments. Whether disclosure of FIDs via "network traffic" are "too technical" to support concrete injury (they are not too technical) or that Relias "did not disclose" Plaintiffs' PII to Meta (it did) are obviously intended to question whether FIDs constitute "personally identifiable information" as defined under the VPPA. MTD at 13. This is clearly a merits question.[6] And finally, whether the videos Relias offers are "public" is an issue of Defendant's status as a VTSP. (Defendant even asserts cases analyzing this issue under 12(b)(6)). Such allegations are not proper under the 12(b)(1) rubric because they are sufficiently intertwined with merits issues. *See Adams,* 697 F.2d 1213; *Kerns,* 585 F.3d 187.

Specifically, the Court should not take judicial notice of Plaintiffs' social media pages, and the Court should disregard the Declaration of Wes Vaux. However, if the Court does consider such facts, it should convert the motion to a motion for summary judgment pursuant to Fed. R. Civ. P 56(c), *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (discussing the conversion of a motion to dismiss to a motion for summary judgment based on a court's consideration of matters outside of the pleadings), and Plaintiffs should be provided an opportunity to seek discovery on the issues raised by Defendant. *See Sol v. M&T Bank*, 713 F.Supp.3d 89 (D. Md. 2024); *and Gay v. Wall*, 761 F.2d 175 (4th Cir. 1985) (reversing summary judgment because the plaintiff lacked adequate opportunity to conduct discovery).

## B.  Violations of the VPPA Cause Concrete Injury

---

[6] *See infra* §IV.D., at 23-24.

Every Court of Appeal to consider the issue has had "no trouble" holding that a defendant's transmission to third parties of its users' Facebook IDs and URLs identifying audio visual materials they requested or obtained constitutes a concrete injury for Article III purposes.[7] *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017); *Paramount Glob.*, 133 F.4th at 647 (collecting cases). No Court of Appeals has held otherwise.

To establish Article III standing, a plaintiff must allege an "irreducible constitutional minimum" of an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Injury in fact is a low threshold." *See Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008). Intangible injuries, including "emotional harm or a violation of one's constitutional rights" can qualify as "concrete injur[ies]" sufficient to support a plaintiff's standing, so long as they possess a sufficiently close relationship to traditional, redressable harms at common law. *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 300 (4th Cir. 2024). "Indeed, *TransUnion* expressly states that at least a couple of invasions of privacy cause sufficiently concrete injuries—such as 'disclosure of private information' and 'intrusion upon seclusion.'" *Paramount Glob.*, 133 F.4th at 647. "Indeed, every other circuit to consider the issue agrees that a similar alleged violation of the VPPA confers standing." *Id.*; *see also NBA*, 118 F.4th at 541 ("One intangible harm that readily qualifies as concrete is the public disclosure of private facts.").

The FAC's claims are no different: Plaintiffs suffered concrete injury when Defendant disclosed their statutorily protected personally identifiable information to Meta. Defendant

---

[7] Defendant begrudgingly admits this fact, but only to the extent it admits "a handful of courts have preliminarily concluded" VPPA violations cause concrete injury, ignoring that this is the standing conclusion reached everywhere.

knowingly disclosed "consumers' identities alongside the titles of the prerecorded audio visual materials they request or obtain." *See* FAC, ¶ 1, 18, 28, 69-77. "Each time a consumer purchases an individual course or otherwise requests or obtains a course through their account, the websites disclose their PII—FID and title of the audio visual material—to Meta via the Meta Pixel." *See id.*, ¶¶ 36, 67, 70-71. The FAC's detailed and thorough allegations satisfy every element of the VPPA: Plaintiffs are consumers, *id*, ¶¶ 12, 22, who requested or obtained specific video materials or services (among other details concerning Plaintiffs and their purchases). *Id*.¶¶ 16, 26. Defendant disclosed to Meta information identifying the videos Plaintiffs requested or obtained, *id.*, ¶¶ 18, 28, without obtaining their written consent. *Id*., ¶¶ 19, 29. Such practices (i) violated the VPPA, (ii) invaded their statutorily protected right to privacy (as afforded by the VPPA), and intruded upon their private affairs and concerns in a way that would be highly offensive to a reasonable person. *See id.*, ¶¶ 20, 30. Defendant's invasion of Plaintiffs' privacy is sufficiently concrete to manifest an injury-in-fact as required by Article III.

But Relias urges instead: the holdings of those courts were only "preliminary" conclusions, and the Fourth Circuit has not weighed in.[8] MTD at 14. Relying on language from *TransUnion* (language expressly contemplated by many of the Courts of Appeals cited above), Relias argues Plaintiffs failed to "allege and show that they suffered a distinct concrete harm because of the alleged statutory violation," that Plaintiffs' allegations of statutory violations alone cannot confer standing, and that Plaintiffs did not allege the violation caused them to suffer additional consequences. MTD at 12-13. However, *TransUnion*, makes clear that intangible harms *can* establish an injury-in-fact and that privacy violations such as those contemplated by the VPPA indisputably fall within the class of injuries possessing "a close relationship to a harm traditionally

---

[8] Bear in mind: Its inclusion of only *two* decisions while ignoring more than twenty others is a tacit admission that this issue is essentially settled.

recognized as providing a basis for a lawsuit in American courts" – namely, public disclosure of private facts and intrusion upon seclusion. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-425 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also Paramount Glob.*, 133 F.4th at 647.

Moreover, each Plaintiff's injury is not based solely on either their allegations that Relias violated a statute *or* the fact that they seek statutory damages, *see* MTD at 12-13.[9] Rather, the FAC alleges that Defendant disclosed private information to an unrelated third party—Meta, *see* FAC, ¶¶ 1, 4-5, 9-10, 18-20, 28-30, 48, 123, and that Defendant intruded upon Plaintiffs' private affairs. FAC, ¶¶ 1, 20, 30. The FAC details how Defendant violated Plaintiffs' privacy—privacy interests that are *consistent* with the protections afforded them by the VPPA. Indeed, *TransUnion* directly supports a finding of Article III standing based on these allegations. 594 U.S. at 425 ("Various intangible harms can also be concrete. . .Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."); *see also Paramount Glob.*, 133 F.4th at 647 (disclosure of private facts causes concrete injury).

The concreteness of Plaintiffs' injury is reinforced both by the consistency with which Courts of Appeal agree that a violation of the VPPA causes an injury-in-fact, and by the nature of the VPPA violations at issue. Just like the plaintiff in *NBA*, Plaintiffs allege Relias's disclosure of their PII to Meta was not incidental, but deliberate, and further conferred a pecuniary benefit upon Relias. *See* FAC, ¶¶ 7, 93; *see also NBA*, 118 F.4th 533 ("Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party. And Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it

---

[9] "Statutory damages are necessary to remedy the intangible harm caused by privacy intrusions. Similar remedies exist in the federal wiretap statute as revised by this committee in 1986. The absence of such a remedy in the Privacy Act of 1974 is often cited as a significant weakness." S. REP. 100-599, at 8.

was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.") (internal citations removed); *Lee v. Springer Nature Am., Inc.*, -- F.Supp.3d ----, 2025 WL 692152, at *6–7 (S.D.N.Y. Mar. 4, 2025) (finding sufficient to confer standing plaintiff's allegations that he was a subscriber to a webpage, submitted personal information to become a subscriber, defendant disclosed to Meta his FID and information identifying the audio visual material he requested or obtained, and Meta used it for its own commercial benefit).

Defendant's additional arguments are equally unavailing. Privacy violations such as those contemplated by the VPPA require no allegation of additional harm beyond the invasion itself. In fact, Courts of Appeals have resoundingly stated VPPA violations are actionable with no showing of additional or consequential harm:

> Congressional judgment leaves little doubt that 18 U.S.C. § 2710(b)(1) is a substantive provision that protects concrete interests. Congress enacted the VPPA "to extend privacy protection to records that contain information about individuals." S. REP. No. 100–599, at 2. **To that end, the VPPA permits consumers to obtain damages for a violation of § 2710(b)(1) without showing consequential harm**. 18 U.S.C. § 2710(c)(2).1 The VPPA does not protect only against harms such as embarrassment and harassment—as Defendant argues. Rather, the statute also protects privacy interests more generally by ensuring that consumers retain control over their personal information. *See* S. REP. No. 100–599, at 6–7 (explaining that the VPPA protects against intrusion in an age when consumers "provide to businesses ... personal information without having any control over where that information goes").

*Eichenberger*, 876 F.3d at 983 (emphasis added);[10] *see also Salazar v. Paramount Global*, 683 F.Supp.3d 727, 739 (M.D. Tenn. Jul. 18, 2023) ("*Spokeo* [is] distinguishable from this VPPA claim,

_____

[10] *See also U.S. Dep't of Justice v. Rprtrs Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understanding of privacy encompass the individuals' control of information concerning his or her person.") *and* S. REP. 100-599, at *8 (discussing an interest the VPPA was designed to protect is the control of information about oneself).

and Plaintiff need not allege any further harm to have standing."). That an invasion of privacy—alone and absent additional consequential harm—causes concrete injury is commonly accepted, including within the Fourth Circuit. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 653 (4th Cir. 2019) ("Our legal traditions, moreover, have long protected privacy interests in the home. Instructions upon personal privacy were recognized in tort law and redressable through private litigation.") (citing the Restatement (Second) of Torts § 652B). "Our inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable." *Hernandez v. Noom, Inc.*, No. No. 1:23-cv-00641-JRR, 2023 WL 8934019, at *5 (D. Md. Dec. 27, 2023) (quoting *Krakauer*, 925 F.3d at 653).

Defendant also argues the information transmitted by its Pixel requires "technical expertise" and therefore cannot have caused Plaintiffs' injury because only a "sleuth" might be capable of locating and translating such data. MTD at 13. To the contrary, Plaintiffs' allegations that their FIDs were transmitted to Meta via network traffic are identical to the allegations of other Meta Pixel cases, wherein courts have overwhelmingly accepted like allegations as information constituting PII. *See Golden v NBCUniversal Media, LLC*, 688 F.Supp.3d 150, 159 (S.D.N.Y. Aug. 23, 2023) ("Courts have uniformly held Facebook IDs to constitute PII under the VPPA.") (collecting cases). The Fourth Circuit has not yet adopted a "standard" for analyzing whether data constitutes PII, but it should be wary of the "ordinary person" standard, which is quickly eroding under the careful analysis of courts taking a close look at its implications.[11]

> The "ordinary person" standard is a judicial construct. . .
>
> The catalyst for the VPPA was an article written after the reporter obtained the titles of video tapes that Judge Bork had rented. The

---

[11] The First Circuit in *Yershov*, 820 F.3d at 486 established the "reasonably and foreseeably likely" test, which analyzes whether data constitutes "personally identifiable information" it if is reasonably and foreseeably likely to identify the consumer to the recipient of the data. This standard has been found to better comport with the plain text of the VPPA. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1225 (C.D. Cal. 2017).

reporter was neither the "ordinary person" nor was he the "average person." The VPPA is not addressed to measuring the effect that a communication or a disclosure would have on the average recipient. **Congress intended to protect renters of video materials from the savvy reporter as well as from the average person. The statutory text makes that clear: an ordinary person would not necessarily have the time, motivation or skill to link a physical address to a person, but physical addresses are protected because they are closely linked to individual identity.** Digital identifiers cannot be excluded from the definition of PII simply because a hypothetical "ordinary person" does not understand how to use them.

*Lee,* 2025 WL 692152, at *15 (emphasis added and cleaned up). This Court need not adopt it.

Finally, Plaintiffs can undoubtedly bring claims against Relias for its disclosure of PII both via the www.freecme.com website *and* through Defendant's possible implementation of Meta's Conversions API ("CAPI"). The FAC alleges that Defendant's disclosures and intrusions occurred in *exactly* the same way on both www.nurse.com and www.freecme.com. FAC, ¶ 77. Because the FAC alleges the VPPA violation is <u>identical</u>, it satisfies the majority, minority, and novel approaches used by courts in resolving whether a class representative has standing to pursue claims on products not specifically attached to her experience. *See e.g., Prince v. Johnson Health Tech Trading, Inc.*, 653 F.Supp.3d 307, 312 (W.D. Va. 2023) (finding under the majority approach "that plaintiff has standing to assert claims related to treadmills she did not purchase because the treadmill she purchased is substantially similar to all Horizon treadmills and her claims are substantially similar to those of the other class members."); and *Hill v. AQ Textiles LLC*, 582 F.Supp.3d 297, 310–11 (M.D.N.C. 2022).

Plaintiffs' allegations concerning Relias' use of CAPI are perfectly appropriate: the FAC makes factual allegations explaining why Plaintiffs reasonably believe Relias configured such technology, FAC, ¶¶ 100-105, *and* the facts at issue "are peculiarly within the possession and control of [Relias.]" *Mystic Retreat Med. Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, 615 F.Supp.3d 379, 385 (M.D.N.C. 2022); *Innova Hospital San Antonio, Limited Partnership v. Blue*

14

*Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018); *see also Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (recognizing that "pleadings on information and belief are permitted when the necessary information lies within defendants' control[.]"). "Facts being in the peculiar control of a defendant is well-established as an appropriate reason to plead upon information [and] belief." *In re Lilley*, No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bankr. M.D.N.C. Apr. 13, 2011).

### C. The VPPA Protects Plaintiffs' Privacy Regardless of Their Employment Status Or The Subject Matter of Videos They Selected

It is all but settled that VTSPs cause concrete injury to their consumers by violating the privacy interests they possess in their private video selections. *See* § IV.B. And yet, absent any relevant authority, Defendant argues Plaintiffs lack the privacy interests provided under the VPPA because they publicized their employment status as registered nurses. MTD at 15-17. Defendant's "logic" thus follows: (a) Plaintiffs requested audio visual materials related to their nursing licenses + (b) Plaintiffs made public that they are nurses, therefore a + b = (c) that the public somehow knows nurses completed continuing education by reviewing videos, waiving Plaintiffs' privacy interest in the video selections they requested or obtained to satisfy the state licensure requirements. Defendant's argument fails for *several* reasons.

First and foremost: The 2012 Amendment to the VPPA would make no sense had Congress intended to deprive consumers of its protections whenever they publicized their own video-watching behavior on the internet. Social media "technologies had created a problem: Americans couldn't share information about their video preferences on social media sites on an ongoing basis without violating the 1988 VPPA[.]" *NBA*, 118 F.4th at 545. The Amendment was enacted to remove "obstacles for American consumers to share information about their video preferences through social media." S. REP. 112-258, at *2-3. Such an amendment is obviously constructed to preserve a consumer's right to privacy in their video material. Otherwise, an exception to the

VPPA could have been included permitting disclosure of PII by a VTSP when the consumer had already publicized their video consumption.

Eliminating protection under the VPPA to persons who have publicized information that suggests they may choose to watch certain categories or subjects of audio visual materials would effectively wipe out the VPPA: even if it doesn't actually identify the material at issue, any information a consumer posts on the internet is suggestive of the audio visual material they consume. Lawyers, doctors, accountants, Star Trek fans, Disney vacationers, individuals with children, sports fanatics, etc., will all now be forced to make a decision: engage with their social media community about the subjects of interest to them or forego all privacy in the audio visual material they consume concerning such subjects. Such a position is absurd and causes chilling effects that are obviously antagonistic to the plain text and purpose of the VPPA.

Next, Defendant's fact pattern is false. Pennsylvania authority lacks any requirement for licensed nurses to consume specific educational material, which means a third party (including Meta) learns nothing about the specific video materials Plaintiffs requested from Defendant upon seeing they are registered nurses.[12] *See* 49 Pa. Code § 21.131. Their publicized employment status in no way betrays that they requested or obtained "specific video materials" from Defendant (which, incidentally, offers a broader spectrum of videos than only nursing education, some of which concern sensitive subjects). *See* Compl. ¶¶ 72 ("Your Wellness Journey: Unlocking the Root Cause of Your Burnout").

Defendant further manufactures a theory that it should not qualify as a VTSP by assimilating itself to movie theaters to take advantage of cases finding such institutions are not VTSPs. MTD at 15-16 (relying on *Hoge v. VSS-S Theaters LLC*, No. 1:23-cv-346, 2024 WL

---

[12] The statute does not require licensed nurses to obtain continuing education in video form, nor from any particular provider.

4547208, at *2 (M.D.N.C. Sept. 10, 2024). Such cases are immaterial, however, because Defendant delivered the audio visual material to be viewed on Plaintiffs' personal, private web browsers—not in public at a movie theater. FAC, ¶¶ 16, 25. The "movie theater" cases have each held (in response to 12(b)(6) motions) that movie theaters are not VTSPs because they do not "rent, sell, or deliver" movies, but instead the theaters deliver licenses to enter a public space for a public purpose. This Court need not reach that issue because it is factually inapplicable.

Defendant's reliance on *Eichenberger*, 876 F.3d 979 (9th Cir. 2017) and *In re Nickelodeon*, 827 F.3d at 284 to argue the VPPA is "narrow" and "context-specific" is as ineffective as Defendant's assertion that *TransUnion* precludes a finding of injury under the VPPA. (*See supra* § IV.B). Notably, although *Eichenberger* and *Nickelodeon* do use the words "context-specific" and "narrow," respectively, Defendant's reference to such phrases is divorced from their context. *Eichenberger* stated the VPPA is a "context-specific <u>extension of the substantive right of privacy</u>," 876 F.3d at 982, and *In re Nickelodeon* used the term "narrow" when discussing 12(b)(6) arguments concerning the scope of data qualifying as PII. 827 F.3d at 284. Neither case supports Defendant's argument that this Court lacks jurisdiction because Plaintiffs have no privacy interest in PII concerning videos requested to maintain their employment licenses—in fact any reasonable interpretation of those cases yields the opposite conclusion. *See Eichenberger*, 876 F.3d at 983 ("[The VPPA] protects generally a consumer's substantive privacy interest in his or her video-viewing history… every disclosure of an individual's 'personally identifiable information'… offends the interests the statute protects.") (emphasis in original); and *In re Nickelodeon*., 827 F.3d at 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is [] concrete in the sense that it involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.").

### D.  Defendant Actually Disclosed Plaintiffs' PII.

As stated above, the FAC alleges and illustrates that Defendant deployed the Pixel on its websites, and when Plaintiffs requested or obtained audio visual materials, the Pixel disclosed information identifying them personally and their requests to Meta. FAC, ¶¶ 18, 28, 71-76. Such allegations include forensic analysis that *shows* what Meta learns when consumers request materials from Defendant's websites—including audio visual materials—and identifies the specific materials requested. FAC, *Figures* 3, 6 ¶¶ 71, 74, 93. Such transmissions are clearly within the scope of disclosures the VPPA was enacted to prohibit, and the FAC's allegations of Defendant's VPPA violations paint injuries that are easily traceable to Defendant's conduct. Traceability requires that Plaintiffs' injuries must have been "likely caused by the defendant." *NBA*, 118 F.4th at 541 (quoting *TransUnion*, 594 U.S. at 423). Plaintiffs' allegations easily reveal that had Defendant not configured its Pixel as it did, Plaintiffs' injuries would not exist.

Defendant claims, however, that Plaintiffs lack a forum because such VPPA violations are *not* fairly traceable to its conduct. Its arguments on this point are problematic. First, Defendant's (continued) attempt to assert extrinsic factual matter supporting its arguments does not truly attack whether Plaintiffs' injuries are traceable as much as they argue Defendant didn't violate the VPPA. And then Defendant claims that its transmissions cannot have caused injury because the data is too complex to qualify as PII. Neither argument is supported by the text of the VPPA or caselaw interpreting it.

As a threshold matter, Defendant continues to couch a 12(b)(6) argument concerning the transmission of PII to Meta as a 12(b)(1) factual attack on jurisdiction, ostensibly allowing it to proffer extrinsic evidence in support. However, where "the jurisdictional facts are intertwined with the facts central to the merits of the dispute" resolving those facts on a 12(b)(1) motion to dismiss is a "serious problem." *Adams*, 697 F.2d at 1219. VPPA cases are no exception to this rule. *See Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *7 n.5 (S.D. Cal. July

10, 2023); *see also In re Vizio, Inc.,* 238 F.Supp.3d at 1216 ("Taken to its logical conclusion, Defendants' argument absurdly implies that a court could never enter judgment against a plaintiff on a VPPA claim if it found that the disclosed information was not within the statutory definition of personally identifiable information; instead, it would have to remand or dismiss the action for lack of jurisdiction."). This theory should be rejected out of hand.

Relias makes several arguments challenging the causal connection between Plaintiffs' injury and its conduct by disputing:

    (1) the technical function of the Pixel and whether it, or Plaintiffs' browsers, disclosed their PII;

    (2) the contents of the disclosures and whether they contain PII, including whether a video is being requested or obtained and whether the title of the video is identified;

    (3) whether Defendant disclosed Plaintiffs' FIDs and whether FIDs are even enough to make a person identifiable; and

    (4) whether an ordinary person would understand the information transmitted to Meta.

MTD § IV. These arguments all go to the core of the VPPA claim and are therefore highly intertwined with the merits arguments, prohibiting resolution of them by this Motion.[13] *See Kerns,* 585 F.3d at 192-93.

---

[13] While these facts should only be resolved by proceeding on the merits, it should be noted that the Declaration proffered by Defendant also fails to contradict Plaintiffs' allegations of jurisdictional facts. Defendant's claims that Plaintiffs' allegations that "Relias uses the Meta Pixel to disclose the specific title of video content they request or purchase, along with the URL where such content is available for purchase" are "incorrect as a jurisdictional matter." MTD at 18. The Declaration, however, undermines this very theory by stating "[w]hen a user browses Nurse.com and adds a course to their shopping cart, the name of course or URL of the course description page may be transmitted to Meta. This is the activity illustrated on Figures 3-a and 3-b of Plaintiffs' Complaint." Decl. ¶ 10.a. Defendant's assertions about what happens after this point do not dispute the fact that when a consumer "**_requests or_** obtains" video material by adding it to their cart, that information is transmitted to Meta. Defendant's Declaration also makes no assertion that Plaintiffs were informed of or consented to this practice. Because the Motion and Declaration do not contradict the allegations in the FAC, Defendant has also failed to transform its facial challenge to jurisdiction into a factual one. *See e.g., Collins v. Toledo Blade,* 720 F.Supp.3d 543, 551 (N.D. Ohio 2024) (rejecting a 12(b)(1) challenge to standing in a VPPA case, finding the "Plaintiffs have alleged that Defendants knowingly disclosed to Meta the fact that Plaintiffs accessed a webpage containing a video, along with the Plaintiffs' FID. Mr. Choi's declaration confirms this is so.").

More importantly, Defendant's arguments do not truly go to the issue of traceability as much as they argue that Defendant did not disclose Plaintiffs' PII to Meta. And it "makes sense" that traceability is not truly at issue under these allegations. *NBA*, 118 F.4th at 544 (holding that harm from the disclosure of personal viewing information to a third party was traceable to the NBA's installation of the Facebook pixel). On this front, Defendant focuses on whether Plaintiffs' alleged requests for audio visual content and alleged disclosures of their FIDs are sufficiently *adequate* disclosures to invoke the protection of the VPPA. MTD at 17-21.[14] But its assertion that an "add-to-cart" function is insufficient to confer standing under the VPPA is undermined by the text of the VPPA itself, which providers broader protections than only the watching of video: it *also* protects the requesting of video, as Plaintiffs did under Defendants' asserted facts. 18 U.S.C. § 2710(a)(3); *and see e.g., Toledo Blade*, 720 F.Supp.3d at 551 (finding liability for disclosing a plaintiff's record of accessing a page that published video). Unsurprisingly, Defendant's focus is not on whether its conduct constitutes the *cause* of Plaintiffs' injuries, especially where the FAC's factual allegations draw the connection quite clearly: Defendant's installation and configure of its Pixel caused the disclosure of Plaintiffs' PII.

Defendant's arguments also fail on their own, simply because they are antagonistic to established VPPA caselaw. Relias claims, for example, it was not Relias but Plaintiffs' own browsers that disclosed the FIDs. MTD at 13, 18-19. Without authority supporting its proposition,[15] Defendant points the finger at Plaintiffs, brushing its own affirmative acts under the rug—decisions on where and how to install and configure the pixel to force transmissions of PII

---

[14] Whether a particular disclosure is actionable is best resolved at the motion for summary judgment stage. *See Martin v. Meredith Corp.*, 657 F.Supp.3d 277, 283 (S.D.N.Y. 2023) ("But whether the precise disclosure is actionable under the VPPA is a question about the merits of Martin's claim, rather than his ability to bring his case in federal court.").

[15] Defendant's authority on this point simply explains what cookies are. MTD at 19 (citing *In re Facebook Internet Tracking Litig.* 956 F.3d 589, 596 (9th Cir. 2020).

to Meta. FAC, ¶¶ 67, 86, 88, 93-94. Such averments, however, have already been considered and rejected by other courts. *See In re Hulu Priv. Litig.*, No. C 11–03764, 2014 WL 1724344, at *13 (N.D. Cal. Apr. 28, 2014) (finding cookies were sent to Facebook only because Defendant chose to include Facebook's technology on its page); *and Golden*, 688 F.Supp.3d at 160 n.9 ("NBCU took affirmative steps to install the Facebook pixel, making NBCU accountable for the disclosure of Golden's PII.").

Defendant next argues that because FIDs do not identify a person, "even assuming Relias disclosed both Plaintiffs' FIDs and their video history, Plaintiffs *still* have not demonstrated any injury that is fairly traceable to that conduct." MTD at 19. On the contrary: whether an FID makes a person identifiable as defined by the VPPA is essentially settled law. *See Golden*, 688 F.Supp.3d at 159 (collecting cases and finding courts have uniformly held an FID qualifies as PII under either the reasonable and foreseeable standard or the ordinary person standard); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023); *Feldman v. Star Trib. Media Co. LLC*, 659 F.Supp.3d 1006, 1020–21 (D. Minn. 2023); and *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) ("The FID is a unique identifier that is enough, on its own, to identify a person.").

The FAC specifically alleges that "[a]n FID is a unique and persistent identifier that Meta assigns to each of its users" and that "[a]n FID is . . . linked to a specific Facebook profile." FAC, ¶¶ 6, 61, 68, 73, 75. It continues by cogently articulating the connection between the Plaintiffs' FIDs and the URLs identifying audio visual material which, together, identify the specific video materials Plaintiffs requested or obtained from Defendant's website(s). *See id*., ¶¶ 18, 28. And Defendant further argues that the URL itself cannot support allegations that it disclosed Plaintiffs' PII because it transmits the course name to Meta. MTD at 17-18. But this, too, is not a winning argument for Defendant, as courts have routinely determined that it is disclosure of information

that identifies the audio visual material consumers request or obtain that gives rise to liability. *See Aldana v. Gamestop, Inc.*, No. 22-cv-7063-LTS, 2024 WL 708589 at *6 (S.D.N.Y. Feb. 21, 2024) (holding that Defendant's disclosure of FIDs and the titles of video games purchased where such games included "cut scenes" was sufficient to confer liability under the VPPA); *and Toledo Blade*, 720 F.Supp.3d at 551.

Finally: Defendant's interpretation of the ordinary person standard (which does not apply in this Circuit) is misrepresentative and is contrary to the established authority on the standard. The ordinary person standard, derived from an incorrect assessment of the VPPA's legislative materials rather than its plain text, focuses on whether a piece of information is capable of identifying a person without having to combine an identifier with additional pieces of data. *See Eichenberger*, 876 F.3d at 985-86 (holding Roku serial number not PII because it was incapable of identifying a person without resort to additional methods and data unavailable to the ordinary person). Both *Eichenberger* and *Golden* demonstrate that the "[d]isclosure of the PII alleged here, **a Facebook ID, would 'readily permit an ordinary person to identify the specific individual's video-watching behavior**.'" *Golden*, 688 F.Supp.3d at 160 (quoting *Eichenberger*, 876 F.3d at 985). Plaintiffs' allegations that Defendant disclosed Plaintiffs' FIDs coupled with the titles of the audio visual materials they requested or obtained are sufficient to state their VPPA claims.

Defendant's Motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety. In the event that the Court grants any part of the Motion, Plaintiffs request leave to amend.

Dated: April 29, 2025

By: */s/ Scott C. Harris*_____

Scott Harris (NC Bar 35328)
sharris@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003
Allen Carney (*special appearance*)
acarney@cbplaw.com
Samuel Randolph Jackson (*special appearance*)
sjackson@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Elliot O. Jackson (*special appearance*)
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:     (305) 357-2107
Facsimile:     (305) 200-8801
ejackson@hedinllp.com

Alton R. Williams*
Law Office of Alton R. Williams 4030
Wake Forest Road, Suite 300 Raleigh, NC
27609
Telephone: 919-340-0020
NC Bar. No. 38812
*Local Civil Rule 83.1(d) Attorneys for
Plaintiffs and Putative Class

## CERTIFICATION OF WORD LIMIT

The undersigned hereby certifies that **PLAINTIFFS' OPPOSITION TO DEFENDANT RELIAS LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** complies with LR 7.2(f)(3)(A). The word count generated by word processing software is 7543 words.

*/s/ Scott C. Harris*
Scott C. Harris
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing document to be filed with the Court's CM/ECF system which will send notification of filing to all counsel of record.

Dated: April 29, 2025.

*/s/ Scott C. Harris*
Scott C. Harris
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*Attorney for Plaintiffs*