UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ANGIE KIELISZEWSKI AND LYNNANN WARE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>RELIAS LLC,<br><br>     Defendant. | Case No. 5:25-cv-00043-M-RN |

**DEFENDANT RELIAS LLC'S REPLY BRIEF IN SUPPORT
OF ITS RULE 12(b)(1) MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii
INTRODUCTION ............................................................................................................... 1
ARGUMENT ....................................................................................................................... 2
    I.    Plaintiffs have not alleged a concrete injury. ................................................ 2
    A.    *TransUnion* requires a concrete injury and Plaintiffs allege only a statutory violation. ................................................................................... 2
    B.    Plaintiffs have not alleged an injury closely related to a traditionally recognized tort. ............................................................................................ 3
    C.    Other VPPA cases cannot provide *these* Plaintiffs standing. ....................... 6
        1.    Most of Plaintiffs' citations predate *TransUnion* or contravene its core holding. ......................................................................................................... 6
        2.    Alleging "identical" allegations from other cases does not support standing in *this* case. ................................................................................. 7
    II.    Plaintiffs cannot demonstrate a concrete injury traceable to Relias given the Vaux Declaration. ....................................................................................... 7
    III.    Dismissal is warranted now. .......................................................................... 9
CONCLUSION .................................................................................................................. 11
CERTIFICATE OF WORD COUNT ................................................................................ 12
CERTIFICATE OF SERVICE .......................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baehr v. Creig Northrop Team*,
  953 F.3d 244 (4th Cir. 2020) .................................................................................. 6

*Barclift v. Keystone Credit Servs.*,
  93 F.4th 136 (3d Cir. 2024) ............................................................................ 4, 5, 9

*Base Metal Trading v. OJSC "Novokuznetsky Aluminum Factory"*,
  283 F.3d 208 (4th Cir. 2002) ................................................................................ 10

*Bullock v. United States*,
  176 F. Supp. 3d 517 (M.D.N.C. 2016) ................................................................. 10

*Burns v. Mammoth Media*,
  2021 WL 3500964 (C.D. Cal. Aug. 6, 2021) ........................................................ 10

*Byars v. Hot Topic*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) .................................................................. 7

*Cantu v. Tapestry*,
  2023 WL 4440662 (S.D. Cal. July 10, 2023) ......................................................... 6

*Collins v. Toledo Blade*,
  720 F.Supp.3d 543 (N.D. Ohio 2024) .................................................................... 6

*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
  637 F.3d 435 (4th Cir. 2011) .................................................................................. 9

*Eichenberger v. ESPN*,
  876 F.3d 979 (9th Cir. 2017) .............................................................................. 3, 6

*Hunstein v. Preferred Collection & Mgmt. Servs.*,
  48 F.4th 1236 (11th Cir. 2022) ............................................................................... 4

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ........................................................................... 3, 5, 6

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) .................................................................................. 8

*McCleary-Evans v. Md. Dep't of the Env't*,
  2013 WL 1890734 (D. Md. May 3, 2013) .................................................................. 8, 9

*Nabozny v. Optio*,
  84 F.4th 731 (7th Cir. 2023) ........................................................................................... 4

*Raines v. Byrd*,
  521 U.S. 811 (1997) ........................................................................................................ 2

*Richmond, Fredericksburg & Potomac R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) .......................................................................................... 7

*Salazar v. Nat'l Basketball Ass'n*,
  118 F.4th 533 (2d Cir. 2024) .......................................................................................... 4

*Salazar v. Paramount Glob.*,
  133 F.4th 642 (6th Cir. 2025) ............................................................................. 4, 6, 10

*Saunders v. Hearst Television*,
  711 F. Supp. 3d 24 (D. Mass. 2024) ............................................................................... 5

*Shields v. Pro. Bureau of Collections of Md.*,
  55 F.4th 823 (10th Cir. 2022) ......................................................................................... 4

*Spokeo v. Robins*,
  578 U.S. 330, (2016) ....................................................................................................... 2

*TransUnion v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................ 2, 3, 4, 6

*U.S. ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) .......................................................................................... 7

*Wilson v. Triller*,
  598 F. Supp. 3d 82 (S.D.N.Y. 2022) ............................................................................... 3

*Yershov v. Gannet Satellite Info. Network*,
  204 F.Supp.3d 353 (D. Mass. 2016) ............................................................................... 6

**Regulations**

49 Pa. Code § 21.131 ............................................................................................................. 3

49 Pa. Code § 21.133 ............................................................................................................. 3

**Other Authorities**

S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1 .................................................................. 5

S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-9 .................................................................. 5

S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-10 ................................................................ 5

# INTRODUCTION

Plaintiffs must allege an injury *to themselves* to show standing. They must trace *that* injury to Relias's conduct. Those well-pled allegations must be capable of proof. Instead of carrying their burden, Plaintiffs rushed to the courthouse without an injury. Some courts have kicked the can down the road, but doing so here may lead to a strongarmed settlement for a class that does not exist. This Court should not be the first in the Fourth Circuit to go down that path.

Amorphous references to potential harm do not demonstrate standing. Whether Plaintiffs' recycled complaint is similar to other class actions alleging a statutory violation of the Video Privacy Protection Act ("VPPA") does not mean that *these* Plaintiffs have standing. Plaintiffs do not allege the type of concrete injury akin to a common-law invasion of privacy that theoretically supports standing. Indeed, they do not pinpoint any relevant allegations in their response—because the Complaint contains none. Plaintiff Kieliszewski does not even allege what video she allegedly watched, and Plaintiff Ware only vaguely alleges that she requested or obtained "Heroin: The Opioid Crisis." Compl., [D.E. 9], ¶¶ 20, 26. Neither alleges that a single person—let alone the broader public—discovered their video-watching history before they filed this Complaint.

Plaintiffs' silence is deafening. Knowledge about any injury they purportedly suffered is uniquely within their possession. They do not need discovery to articulate it. Yet, they offer no facts or evidence to support their claims. Furthermore, the Declaration of Wes Vaux ("Vaux Declaration")—for which Plaintiffs forecast no meaningful evidentiary response—demonstrates that Plaintiffs *cannot* show a

1

concrete injury traceable to Relias. Relias does not disclose Plaintiffs' Facebook IDs ("FID") or the titles of any audio-visual material they request or view. Plaintiffs cannot slip into the courthouse doors without satisfying foundational requirements for invoking the Court's jurisdiction.

## ARGUMENT

**I.     Plaintiffs have not alleged a concrete injury.**

Plaintiffs have not linked any concrete or particularized injury to the alleged statutory violations. Their contrary arguments ignore this and otherwise lack merit.

### A.    *TransUnion* requires a concrete injury and Plaintiffs allege only a statutory violation.

Plaintiffs cannot plead a statutory violation and figure out their injury-in-fact later. Article III "keep[s] the Judiciary's power within its proper constitutional sphere." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). To exercise jurisdiction, a court must independently assess standing, including whether the plaintiff has alleged a concrete injury. *See TransUnion v. Ramirez*, 594 U.S. 413, 426 (2021). Congress cannot erase that obligation "by statutorily granting the right to sue." *Raines*, 521 U.S. at 820 n.3. Instead, "Article III … requires a concrete injury even in the context of a statutory violation." *Spokeo v. Robins*, 578 U.S. 330, 341 (2016). To show a concrete injury, a plaintiff must show an "asserted harm [that] has a close relationship to a harm traditionally recognized," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 414, 425 (cleaned up).

2

Here, Plaintiffs assert that Relias exposed their private information to Meta but do not say what video-watching history was disclosed. *See* Compl. ¶¶ 16, 20, 26, 30; *cf.* Response, [D.E. 22], at 10-13, 16-20. Nor do they allege that such disclosure was public, or that a single person saw the information allegedly disclosed to Meta. Plaintiffs surmise that "[a]ny person *could* use" a FID to access their Facebook profiles and view "publicly available, uniquely identifying information." Compl. ¶ 15 (emphasis added). Yet they do not allege that an ordinary person could use the c_user cookie to "identify a specific individual's video-watching behavior"—let alone that an ordinary person *actually* did—as required for disclosure. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284, 290 (3d Cir. 2016); *Wilson v. Triller,* 598 F. Supp. 3d 82, 90-91 (S.D.N.Y. 2022) (concluding that the "ordinary person" standard for PII is "the correct one"). That Meta has the capability to read the c_user cookie is irrelevant because the abilities of a recipient do not dictate what constitutes PII. *Eichenberger v. ESPN*, 876 F.3d 979, 985 (9th Cir. 2017).

Plaintiffs cannot manufacture a hypothetical injury based on the "sensitive" topics covered in the continuing education courses Relias offers. Response at 23. That nurses receive training on sensitive topics is not private information. The very nature of the profession necessitates this type of training, and state law requires it. *See* 49 Pa. Code §§ 21.131, 21.133.

### B. Plaintiffs have not alleged an injury closely related to a traditionally recognized tort.

Since *TransUnion*, the Third, Seventh, Tenth, and Eleventh Circuits hold that business-to-business disclosures fail to show standing because the alleged harm does

3

not bear a close relationship to one resulting from a traditionally recognized privacy tort. *See Barclift v. Keystone Credit Servs.*, 93 F.4th 136, 145 (3d Cir. 2024); *Nabozny v. Optio Sols.*, 84 F.4th 731, 733 (7th Cir. 2023); *Shields v. Pro. Bureau of Collections of Md.*, 55 F.4th 823, 827 (10th Cir. 2022); *Hunstein v. Preferred Collection & Mgmt. Servs.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (en banc). The Second and Sixth Circuits hinted the other way, albeit on disparate facts. *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024); *Salazar v. Paramount Glob.,* 133 F.4th 642 (6th Cir. 2025) (ultimately dismissing for failure to state a claim).

Plaintiffs rely on the prolific *Salazar* plaintiff. Response at 8-9 & n.3, 16, 18-20. But that dicta cannot be squared with *TransUnion*'s conclusion that a business-to-business disclosure of video-watching behavior does not closely resemble the public disclosure of private information. Indeed, the Sixth Circuit acknowledged that the cases it relied on "predate *TransUnion*." *Id.* at 647 n.5.

Regardless, this case isn't *Salazar*. Plaintiffs do not allege *their own* concrete harm closely related to a traditionally recognized tort. Asserting that Relias violated their "statutorily protected right to privacy (as afforded by the VPPA), and intruded upon their private affairs and concerns in a way that would be highly offensive to a reasonable person" is a bare legal conclusion. Plaintiffs at least have to say *what* was disclosed and *how* disclosure harmed them. And there is no intrusion upon seclusion or public disclosure of private facts when, as here, no ordinary person accessed or viewed the supposedly private information. *See Nabozny*, 84 F.4th at 736 ("[T]he harm at the core of the public-disclosure tort is the humiliation that accompanies the

4

disclosure of sensitive or scandalizing private information to public scrutiny…. [W]ithout a public-exposure component, the plaintiff's alleged harm was not analogous.") (cleaned up); *Barclift*, 93 F.4th at 146. The VPPA is narrowly drawn to apply in specific contexts. *See In re Nickelodeon*, 827 F.3d at 284 ("Congress's purpose in passing the [VPPA] was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits."); *Saunders v. Hearst Television*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024) ("[T]he VPPA … applies only to a narrow group of business entities and specific group of consumers."); S. REP. 599, 12, 1988 U.S.C.C.A.N. 4342-1, 4342-9, 4342-10 ("[P]ersonally identifiable information is intended to be transaction-oriented. It is information that identifies a particular person as having engaged in a specific transaction with a video tape service provider."). Those contexts do not extend here.

Nowhere does Plaintiffs' response point to any concrete injury. *See* Response at 16-22. At most, Plaintiffs allege that they "requested or obtained" continuing education videos from Nurse.com, that Relias disclosed to Meta the titles of videos Plaintiffs put in their online shopping cart (not ones they actually requested via purchase, or actually viewed), and that such disclosure "violated [their] rights under the VPPA and invaded [their] statutorily conferred right to keep such information … private." Compl. ¶¶ 5-6, 16-20, 26-30 & Figs. 3-a, 3-b, 3-c; Response at 8-11, 16-20. That fails Article III standing. [D.E. 18, at 17-20]. Plaintiffs also lack standing related

5

to freecme.com—a website with which they allege no interaction. *See Baehr v. Creig Northrop Team*, 953 F.3d 244, 252-53 (4th Cir. 2020); *contra* Response at 21.

### C. Other VPPA cases cannot provide *these* Plaintiffs standing.

Plaintiffs principally rely on non-binding cases from other jurisdictions. *See generally* Response at 16-22. Those cases do not show standing for *these* Plaintiffs.

#### 1. Most of Plaintiffs' citations predate *TransUnion* or contravene its core holding.

The Fourth Circuit has not analyzed Article III standing under the VPPA. The bulk of Plaintiffs' citations predate *TransUnion* and wrongly assume that statutory violations alone confer standing. *See, e.g.*, *Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017); *In re Nickelodeon*, 827 F.3d 262 (3d Cir. 2016); *Yershov v. Gannet Satellite Info. Network,* 204 F. Supp. 3d 353 (D. Mass. 2016). Those cases lack persuasive authority.

So do the post-*TransUnion* cases, which reflexively rely on pre-*TransUnion* authority without substantively explaining what concrete injury exists. *See, e.g.*, *Paramount,* 133 F.4th at 647 n.5; *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 551 (N.D. Ohio 2024); *Cantu v. Tapestry*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *4 n.5 (S.D. Cal. July 10, 2023).

Finally, none of the cited cases involve continuing education courses, required for a professional license, regulated by state law. Each involves video content viewed in a more traditionally private sphere (*e.g.*, movies, television, etc.). The distinction matters. Disclosing that a professional complied with state requirements is not akin to harms traditionally recognized for an invasion-of-privacy tort claim.

6

## 2. Alleging "identical" allegations from other cases does not support standing in *this* case.

Plaintiffs say the Complaint's allegations "are identical to the allegations of other Meta Pixel cases." Response at 20. But recycling generalized allegations about the VPPA's background, Meta Pixel, and *counsel's* interactions with Nurse.com—all of which largely mirror VPPA complaints Plaintiffs' counsel has filed in other districts[1]—does not help *these* Plaintiffs. *See Byars v. Hot Topic*, 656 F. Supp. 3d 1051, 1061 (C.D. Cal. 2023) (concluding that copy-and-paste pleading "almost by definition" lacks "the factual specificity necessary to state a claim for relief."). The question is whether the 17 paragraphs dealing with *Plaintiffs'* personal interactions with Nurse.com show a concrete injury. *See* Compl. ¶¶ 12-19, 22-29. They do not. [D.E. 18, at 17-20]; *see supra* Argument, Part I.A-B.

## II. Plaintiffs cannot demonstrate a concrete injury traceable to Relias given the Vaux Declaration.

If the Court moved from allegations to declaration, Plaintiffs' claims would still fail. The plaintiff has the burden to prove standing by a preponderance of the evidence, *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009), and "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists," especially once a defendant raises a factual challenge to jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A plaintiff cannot rely on mere allegations in its complaint. *See Kerns v.*

---

[1] *E.g.*, *Cochenour v. 360Training.com*, No. 1:25-CV-00007 (W.D. Tex. Jan. 2, 2025); *Michael Archer v. NBC Universal Media*, No. 2:24-CV-10744 (C.D. Cal. Dec. 13, 2024); *Damrau et al. v. Colibri Grp.*, No. 4:24-CV-01441 (E.D. Mo. Oct. 25, 2024).

7

*United States,* 585 F.3d 187, 193 (4th Cir. 2009); *McCleary-Evans v. Md. Dep't of the Env't*, No. JKB-12-2928, 2013 WL 1890734, at *1 (D. Md. May 3, 2013) (unpublished) (dismissing for lack of jurisdiction where plaintiff "rested on her allegations"). Plaintiffs fail to carry their burden. The Vaux Declaration sets forth the following undisputed facts:

- Only a small portion of the courses available on Nurse.com include a video component.

- When a user adds a course to their shopping cart on Nurse.com, the name of the *course* and URL of the *course description* may be transmitted to Meta. This URL does not link to any video content.

- When a user proceeds to the checkout page, the URL does not identify the course being requested.

- The names and URLs of purchased courses are not transmitted to Meta.

- The names and URLs of courses that users launch are not transmitted to Meta. The courses launch on a separate website that does not use the Meta Pixel.

Vaux Decl., [D.E. 18-1], ¶¶ 6-11. Contrary to Plaintiffs' arguments, Response at 15, the Court can consider the Vaux Declaration because Relias raises a factual attack on Plaintiffs' jurisdictional allegations. *Richmond,* 945 F.2d at 768.

The Vaux Declaration demonstrates that Relias does not "disclos[e] … video-watching behavior" as Plaintiffs assert, thus disproving any theoretical concrete injury. In response, Plaintiffs provide no evidence contradicting the Vaux Declaration on either injury or traceability. Plaintiffs Kieliszewski or Ware declare no injury. They fail to forecast what evidence they *could* muster. Instead, Plaintiffs rest on their allegations. That is insufficient. *See McCleary-Evans*, 2013 WL 1890734, at *1.

Although Plaintiffs argue that "disclosure of video-watching behavior causes concrete injury," Response at 13; *see id.* at 16-22, they do not provide any evidence that *their* video-watching behavior was exposed by Relias. At most, Plaintiffs insist that Relias discloses the courses Plaintiffs put in their online shopping cart. Compl. at Figs. 3-a, 3-b. A "course," however, is not synonymous with a "video" (many courses Relias offers do not contain a video), and adding a course to an online cart is not tantamount to "requesting" it under the VPPA. *Contra* Response at 26-27 & n.13. The user can put the video "back on the shelf." Plaintiffs do not allege that Relias discloses either the videos the user "puts on the counter" to be "rung up," or the ones with which the user "walks out of the store." [D.E. 18, at 23]. The Vaux Declaration avers that the videos users request or obtain are not actually disclosed. Vaux Decl. ¶¶ 9-11. Plaintiffs' silence speaks volumes.

Finally, Plaintiffs do not allege or provide evidence of any non-speculative injury related to Meta's Conversions API. *See* [D.E. 18, at 20]. Their claims related to Relias' "possible implementation of Meta's Conversions API" are "too speculative to support standing." *Barclift*, 93 F.4th at 148.

### III. Dismissal is warranted now.

Still, Plaintiffs deflect, arguing that Relias' Motion is "masquerad[ing] as a 12(b)(1) factual attack," and ask the Court to delay resolution because standing is "inextricably intertwined" with the merits. Response at 8-9, 18-19. The Court should decline. *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 448 (4th Cir. 2011); *see also Bullock v. United States*, 176 F. Supp. 3d 517, 529-30 (M.D.N.C. 2016)

9

(granting 12(b)(1) motion where the nonmoving party "offer[ed] no competent evidence" in response to a sworn declaration).

When the plaintiff does not respond to the factual evidence, the Court may dismiss even if jurisdictional issues overlap with the merits. *See, e.g.*, *Burns v. Mammoth Media*, No. CV2004855DDPSKX, 2021 WL 3500964, at \*4 (C.D. Cal. Aug. 6, 2021) (unpublished) ("[T]here is significant overlap of jurisdictional and substantive allegations.... There is, however, no corresponding intertwining of jurisdictional and merits-related, disputed facts [] [a]s ... Plaintiff has failed to meet his burden to respond to Defendant's evidence with any competent proof.").

To be sure, VPPA cases like Plaintiffs' are often dismissed for failure to state a claim. *See, e.g.*, *Paramount*, 133 F.4th at 653. Plaintiffs' case no doubt shares the statutory flaws of its predecessors. But the Court need not delay the inevitable. Plaintiffs have not disputed the facts in the Vaux Declaration. Although they talk about proving their claims in the future, cases like this one do not proceed to trial. They are either dismissed on the merits or settled before class certification. Given that context, the Court should not accept Plaintiffs' invitation—in so thin a case—to convert this forum to a clearinghouse for strongarmed settlements. Because the undisputed facts show that Plaintiffs lack standing, the Court should dismiss.

If, however, the Court delays resolution of jurisdiction, Relias welcomes a brief period of limited jurisdictional discovery on standing. *Base Metal Trading v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002)

10

("[J]urisdictional discovery is … committed to the sound discretion of the district court.").

## CONCLUSION

For these reasons the Court should dismiss the Amended Complaint [D.E. 9] for lack of subject matter jurisdiction.

Respectfully submitted, this 13th day of May, 2025.

SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN,
L.L.P.

*/s/ H. Hunter Bruton*
H. Hunter Bruton
North Carolina State Bar No. 50601
David A. Senter, Jr.
North Carolina State Bar No. 44782
C. Michael Anderson
North Carolina State Bar No. 42646
Samantha B. Taylor
(*admission pending*)
North Carolina State Bar No. 56609

Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
hbruton@smithlaw.com
dsenter@smithlaw.com
manderson@smithlaw.com
staylor@smithlaw.com

*Counsel for Relias LLC*

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief is in compliance with Rule 7.2(f)(3) of the Local Rules for the Eastern District of North Carolina, in that it contains less than 2,800 words, excluding the portions of the brief covered by Local Rule 7.2(f)(1).

This the 13th day of May, 2025.

*/s/ H. Hunter Bruton*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2025, I electronically filed the above with the Clerk of Court using the CM/ECF System, which will provide electronic copies to counsel of record.

*/s/ H. Hunter Bruton*