UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ANGIE KIELISZEWSKI, AND LYNNANN WARE, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br>   v.<br><br>RELIAS LLC,<br><br>               Defendant. | Case No. 5:25-cv-00043-M-RN |

**PLAINTIFFS' SUBMISSION CONCERNING**
*AMERICAN FEDERATION OF TEACHERS V. BESSENT*

## I. INTRODUCTION AND BACKGROUND

Plaintiffs Kieliszewski and Ware ("Plaintiffs") suffered concrete injury when Defendant Relias LLC ("Relias" or "Defendant") disclosed their personally identifiable information ("PII") to Meta in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Indeed, each of the seven federal Circuit Courts to have considered the issue has concluded that similar VPPA allegations constitute concrete injury, and nothing in *American Federation of Teachers v. Bessent* ["*Bessent II*"], No. 25-1282, 2025 WL 2313244 (4th Cir. Aug. 12, 2025), suggests another conclusion.[1] Plaintiffs' Amended Complaint alleges Defendant disclosed to Meta sensitive, legally protected information to fuel Meta's targeted advertising machine. As outlined below, it is well-settled that the injuries the VPPA protects against have a "close relationship" with harms traditionally recognized as providing a basis for lawsuits in American courts, namely, intrusion upon seclusion and public disclosure of private facts. *Pileggi v. Washington Newspaper Publishing Company, LLC*, 146 F.4th 1219 (D.C. Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).[2]

On May 13, 2025, *see* Dkt. No. 23, Plaintiffs and Defendant completed briefing issues raised by Defendant in its Motion to Dismiss, Dkt. Nos. 17-18. On August 7, 2025, the Court referred the Motion to Dismiss to Mag. Judge Robert T. Numbers, II to prepare a memorandum and recommendation. Dkt. No. 27a-b. On September 3, 2025, the Court entered its order requesting the Parties to submit briefs concerning "what impact, if any, the Fourth Circuit's recent decision

---

[1] On September 8, 2025, a Petition for Rehearing En Banc was filed in *Bessent II*. *See* No. 25-1282, Dkt. No. 57.

[2] *See infra* IV.D; *see also Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1015 (D. Minn. 2023) ("The conclusion that a plaintiff…has suffered a concrete injury for purposes of Article III standing to assert a VPPA claim is supported by every federal circuit court that has considered the issue.") (collecting cases).

in *American Federation of Teachers v. Bessent*" has on the issues raised in the Motion to Dismiss. Dkt. No. 27c.

**II. ARGUMENT**

The Amended Complaint plainly alleges that Plaintiffs suffered concrete injury and possess the requisite Article III standing to pursue their claims in this Court. Every Federal Circuit to have considered the issue has held that disclosures of PII in violation of the VPPA cause concrete injury, *see* §II.D, and such decisions are not only consistent with, but are *required* by the Supreme Court's holding in *TransUnion*. Unlike those *TransUnion* plaintiffs who complained only of mailings they received with formatting defects that technically violated the Fair Credit Reporting Act (but were otherwise accurate), 594 U.S. at 418, Plaintiffs do not allege a bare procedural violation of the VPPA. Instead, Plaintiffs allege violations of the substantive heart of the VPPA, like those *TransUnion* class members whose inaccurate information was *disclosed* to third parties in violation of the FCRA's substantive provisions, 594 U.S. at 442. Plaintiffs suffered exactly the injuries the VPPA was enacted to prevent.

Due to factual and legal distinctions including that the standing analysis is merely dicta, *see* § II.C *infra*, the Fourth Circuit's recent decision in *Bessent II* has no impact on Plaintiffs' right to seek redress for their injuries in this Court. If it has any impact at all, *Bessent II* bolsters the Plaintiffs' arguments that Relias' violation of their rights under the VPPA caused them a concrete injury, which this Court has the power and jurisdiction to resolve. At most, *Bessent II* could (but does not) affect the analysis of the intrusion upon seclusion analog, but it does not address the common law analog of public disclosure of private facts or tangible monetary injuries—both of which are similar to Plaintiffs' injuries.

### A. *Bessent* Is Distinguishable On Its Facts

In addition to distinctions between the legal postures of the cases, *Bessent* is factually distinguishable. *Bessent* materially differs from the Amended Complaint's allegations in at least three ways. First, the recipients of the sensitive personal information at issue in *Bessent* were given access to large databases that housed the personal data (e.g., social security and taxpayer identification numbers, names, dates of birth, contact information, and other personal information). *See Am. Fed'n of Tchrs. v. Bessent* ["*Bessent I*"], 772 F. Supp. 3d 608, 622–23 (D. Md. 2025). Second, the employees who received access to the personal information databases and the subjects of the personal information were employed within the same government agencies. *Bessent II*, 2025 WL 2313244, at *1. And third, database access was granted to them in furtherance of an ostensibly legitimate business purpose (i.e., the administrative program).[3] *Id*.

The *Bessent* allegations are a far afield from the Amended Complaint's assertions, which allege that Relias disclosed their PII not to Relias' internal employees or subsidiaries, but to an entirely different corporation—Meta. Am. Compl. ¶¶ 67–105. Plaintiffs further allege such disclosures were devoid of any legitimate business purposes and were in fact made solely in furtherance of Relias' desire to serve Plaintiffs and the class members with targeted advertising. *Id.* ¶¶ 67–84. Finally, Plaintiffs cogently articulated that Relias' website design disclosed personally identifiable information of Plaintiffs and the class members to Meta on every occasion they accessed video material from the website, *and* that Meta used every transmission's payload to target them with advertising. *Id.* ¶¶ 60, 79, 81, 89–91, 96. These allegations describe "investigation and examination." *See* Restatement (Second) Torts § 652B cmt. B ("The invasion…may also be by the use of defendant's senses, with or without mechanical aids, to

---

[3] And which purpose very well provided the defendant with a strong defense in that matter. *See Bessent II*, 2025 WL 2313244, at *9.

oversee or overhear the plaintiff's private affairs[,]" and may also be "by some other form of investigation or examination into his private concerns, as by opening his private and personal mail[.]").

Unlike *Bessent*, which granted employees within the same agency access to databases that contained personal information in furtherance of a government policy, Relias disclosed sensitive and legally-protected information of its customers to one of the largest advertisers in the history of the world so that it could serve them with targeted advertising. As found by every federal Circuit to have analyzed the issue, such unlawful disclosures confer standing.

### B. *Bessent II's* Reasoning Supports Plaintiffs' Standing

The factual distinctions described above are critically important: they are analogous to the facts of *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 920–21 (4th Cir. 2022) and *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 648 (4th Cir. 2019), which *Bessent II* found correctly determined those plaintiffs possessed standing. *Garey* involved violations of the Driver's Privacy Protection Act, alleging that defendant personal injury lawyers unlawfully acquired plaintiffs' names and addresses from car accident reports and used their names to mail unsolicited attorney advertising materials. *Garey,* 35 F.4th 920-21. *Krakauer* involved plaintiffs who had placed themselves on do-not-call lists but nonetheless received unsolicited sales calls in violation of the Telephone Consumer Protection Act. 925 F.3d 643.

*Bessent II* articulates that the standing analysis in *Garey* and *Krakauer* hinged on the fact that the private information defendants obtained was used to send the plaintiffs unsolicited mail and/or telephone calls, which intruded upon their seclusion. 2025 WL 2313244, at *6. Plaintiffs allege that Relias not only disclosed their PII in violation of the VPPA, but also, like the defendants in *Garey* and *Krakauer*, Defendant's disclosures were made to serve the Plaintiffs with targeted advertising. Am. Compl. ¶¶ 60, 79, 81, 89–91, 96. Under *Bessent II*, this clearly constitutes an

4

intrusion upon their seclusion. Since the decision is silent on the monetary injury at issue in this case and the public disclosure of private facts, its analysis cannot impact the standing analysis here with respect to those issues.

### C. *Bessent II's* Standing Analysis Is Mere Dicta, It Is Limited to The Common Law Analogue of Intrusion Upon Seclusion, and It Analyzed Standing Under A Different Procedural Posture

Critically, the Fourth Circuit specifically refused to "**hold with certainty that [the *Bessent* plaintiffs] lack standing**" and instead opted for a "**statistically surer conclusion**: that Plaintiffs have failed, by a decent margin, to show that they will likely prevail on all of these issues combined." *See* 2025 WL 2313244, at *10 (emphasis added). This strategic decision renders the entire Article III discussion non-binding dicta. *See United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) ("The first significant problem is that the statements they rely upon in the two cases are pure and simple dicta, and, therefore, cannot serve as a source of binding authority in American jurisprudence."), *aff'd*, 544 U.S. 349 (2005). Therefore, *Bessent II's* reversal of the preliminary injunction granted by the district court does not impact the standing analysis here.

But *Bessent II* has no impact on the standing analysis here for another reason: the Plaintiffs' injuries *also* find similarities with two other common-law analogs. First, Relias disclosed Plaintiffs' information to Meta so that Meta can use the information within its advertising business—an action similar to the common law tort of public disclosure of private facts. *See Salazar v. Nat'l Basketball Ass'n*, 118 F. 4th 533, 541 (2d Cir. 2024) (quoting Restatement (Second) of Torts § 652D). Relias gave Meta Plaintiffs' federally protected personally identifiable information alongside an unauthorized license for Meta to use Plaintiffs' PII for its own purposes, as well as for the benefit of Relias and its millions of advertising partners, who can target Plaintiffs with unsolicited advertisements based on the videos they requested. *Id.* ¶¶ 90, 96. Disclosure of the private nature of videos they requested or obtained to Meta, to use for advertising "corresponds to those elements"

of giving public nature concerning the private life of another. *Pileggi*, 146 F.4th at 1229; *Salazar v. Paramount Global*, 133 F.4th 642, 647 (6th Cir. 2025); and *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 250–51 (S.D.N.Y. 2025).

Second, Relias's installation and operation of the Pixel causes Plaintiffs monetary injury by depriving them of the full value of the property it took without their consent. Relias' Website recorded and disclosed personal information concerning the plaintiffs. Am. Compl. ¶¶ 67–84. Relias used the personal information to generate profit, by disclosing the information to Meta to target Plaintiffs with advertising. *Id.* ¶¶85–99. Plaintiffs' personal information clearly belongs to them, *Pileggi*, 146 F.4th at 1230, and they alleged this information has monetary value. Am. Compl. ¶¶ 49–53. Plaintiffs allege that Relias took possession of their valuable personal information and used it for its own purposes without their authorization or consent, depriving them of control over, and the use and enjoyment associated with the profits earned from such information. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 600-601 (9th Cir. 2020). As explained by the Fourth Circuit, the common-law analog need not be an express provision within the statute at issue. 2025 WL 2313244, at *6-7 (finding plaintiffs in *Garey* likely suffered intrusion upon seclusion due to unsolicited advertisements they received, even though the class of plaintiffs only sought liability for the wrongful obtaining of data in violation of the DPPA, which does not require such mailings to impose liability).

Lastly, *Bessent II* analyzed standing under the standard required for a preliminary injunction, 2025 WL 2313244 at *2, which makes it procedurally distinct from the motion to dismiss at issue in this matter. This distinction matters because the legal standard for evaluating standing depends on the procedural posture of the litigation. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992) ("each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required

6

at the successive stages of the litigation."); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 295 (4th Cir. 2024) (same). Because a preliminary injunction requires a plaintiff to prove her likelihood of succeeding on the merits (among other requirements and with factual evidence where available), *Murthy v. Missouri*, 603 U.S. 43, 58 (2024), the analysis is fundamentally different from a motion to dismiss, which necessarily requires the court to attach a "presumption of truthfulness" to the plaintiff's allegations. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The *Bessent* plaintiffs were required to make a clear showing they were likely to satisfy every element of standing (and every other issue) supported by factual evidence where available, including declarations and documentation. *See Murthy*, 603 U.S. at 58. *Bessent II* recognized this demanding requirement when it described the "multiplicative problem" litigants face of having to satisfy all of the elements necessary to obtain a preliminary injunction (and not just a majority of factors). 2025 WL 231244, at *4. Additionally, the *Bessent II* Court analyzed the plaintiffs' standing after development of a factual record including "plaintiffs' allegations, declarations from government employees, and the administrative records[.]" 772 F.Supp.3d at 633. The current record is limited to the Amended Complaint,[4] and neither the Motion nor the declaration attached thereto contradict the well-pled allegations and the exemplars contained therein showing "that when a consumer 'requests or obtains' video material by adding it to their cart, that information is transmitted to Meta" in violation of the VPPA. *See* Am. Compl. ¶¶ 1, 28, 36, 77, 93; Dkt. No. 22 (citing *Collins v. Toledo Blade*, 720 F.Supp.3d 543, 551 (N.D. Ohio 2024)). Plaintiffs' allegations are sufficient for standing at this stage, and *Bessent II* is distinguishable on this basis alone.

---

[4] Defendant attached Exhibits A and B to its Motion to Dismiss and asked the Court to take judicial notice of Plaintiffs' social media profiles. Dkt. No. 18. Plaintiffs' opposed Defendant's factual assertions in their Opposition. Dkt. No. 22. Plaintiffs stand on their opposition, but if the Court agrees to consider the materials, those materials would be part of the record as well.

**D. Every Federal Circuit Presented With Allegations Of Disclosures Of PII In Violation Of The VPPA Has Found Standing**

In addition to the preceding reasoning outlining why *Bessent II* does not impact Plaintiffs' standing in this matter, it makes sense to revisit the history of this well-settled issue because the weight of authority holds that VPPA violations cause concrete injury sufficient to confer standing. Every Federal Circuit Court of Appeals has found that disclosures of PII in violation of the VPPA inflict concrete injury, in addition to over thirty federal District Courts. *See Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1014 (D. Minn. 2023) (collecting cases)[5]; *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024) ("Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party. And Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.") (internal citations omitted); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Salazar v. Paramount Global*, 133 F.4th 642, 647 (6th Cir. 2025); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017); *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1229 (D.C. Cir. 2025). No federal Circuit Court of Appeals has found that well-pled allegations, in the context of a plaintiff whose information was disclosed in violation of the VPPA, lack standing to bring suit.

---

[5] At least forty federal courts presented with the issue of standing have found well-pled allegations that a plaintiff's PII was disclosed to a third party in violation of the VPPA suffered concrete injury. This includes federal Circuit Courts of Appeal for the 2nd, 3rd, 6th, 7th, 9th, 11th, D.C., and District Courts in the 1st and 8th Circuits.

As explained in § II.B, *supra*, Relias invaded Plaintiffs' privacy by disclosing their PII to a third party, Meta. *See* Am. Compl. ¶¶ 1, 12, 16–22, 26–30, 36, 67, 69–77. Unlike the grant of access to government agency employees assigned to a DOGE role at issue in *Bessent*, the public disclosure of federally protected information in this case is consistent with the common law torts of intrusion upon seclusion and public disclosure of private facts which are common law analogues consistently found most similar to allegations of VPPA violations.

Indeed, under facts involving the identical technology at issue in this matter, the D.C. Circuit correctly followed the other Circuits in holding the VPPA allegations bore a close relationship to the common law privacy analogs of intrusion upon seclusion and public disclosure of private facts, by explaining that:

> The [VPPA] remedies the kind of harm addressed by the intrusion-upon-seclusion tort . . . Washington Newspaper allegedly collected and handed off Ms. Pileggi's private information to Meta for its own benefit. Holding a party liable for contributing to a tort is a well-established common law principle . . . Because the disclosure of private video records parallels the offensive intrusions into privacy recognized at common law, Congress here simply gave protection to a common law injury cloaked in more modern garb…
>
> Ms. Pileggi's claim also parallels the longstanding tort of publicity given to private life. At common law, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Second Restatement § 652D. Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." . . . The Washington Newspaper's alleged disclosure of video records to Meta corresponds to those elements.

*Pileggi*, 146 F.4th at 1229.

Moreover, although the Fourth Circuit has not yet spoken, district courts in this Circuit agree with the consensus of other federal courts that well-pled informational privacy violations—such as violations of the VPPA—alleging unauthorized dissemination of personal information,

9

even without actual damages, constitute an invasion of privacy and are sufficient to confer Article III standing. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 636 (E.D. Va. 2016) ("This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing."); *Gillison v. Lead Express, Inc.*, No. 3:16CV41, 2017 WL 1197821, at *7 (E.D. Va. Mar. 30, 2017) (quoting the VPPA as an example of Congress enacting statutory privacy rights to strengthen common law privacy torts).

Allegations of privacy violations based on the disclosure of PII in violation of the VPPA have been uniformly found to cause concrete injury sufficient to confer standing. Nothing in *Bessent II*, which did not involve the VPPA, disclosure of personal information to a third party, nor targeted advertising, shakes this foundation. Privacy violations like those alleged by Plaintiffs have been universally found to align with the common law torts of intrusion upon seclusion and public disclosure of private facts, and Plaintiffs' additional allegations of monetary injury solidify their right to seek redress in this Court.

## CONCLUSION

*American Fed'n of Tchrs v. Bessent* has little to no impact on the standing analysis at issue in this matter. For the foregoing reasons and the reasons stated in Plaintiffs' Opposition to Motion to Dismiss, Plaintiffs respectfully request that the Court recognize its authority and jurisdiction to adjudicate this matter and deny Defendant's Motion.

Dated: September 17, 2025

By: */s/ Elliot O. Jackson*
Elliot O. Jackson (*special appearance*)
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
ejackson@hedinllp.com

Allen Carney (*special appearance*)
acarney@cbplaw.com
Samuel Randolph Jackson (*special appearance*)
sjackson@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

Scott Harris (NC Bar 35328)*
sharris@milberg.com
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003

Alton R. Williams*
Law Office of Alton R. Williams 4030 Wake Forest Road, Suite 300 Raleigh, NC 27609
Telephone: 919-340-0020
NC Bar. No. 38812
*Local Civil Rule 83.1(d) Attorneys for Plaintiffs and Putative Class

## CERTIFICATION OF WORD LIMIT

The undersigned hereby certifies that **Plaintiffs' Submission Concerning** *American Federation of Teachers v. Bessent* complies with LR 7.2(f)(3)(A)). The word count generated by word processing software is 3,316 words.

By: */s/ Elliot O. Jackson*
Elliot O. Jackson
**HEDIN LLP**

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing document to be filed with the Court's CM/ECF system which will send notification of filing to all counsel of record.

Dated: September 17, 2025               By: */s/ Elliot O. Jackson*
                                        Elliot O. Jackson
                                        **HEDIN LLP**