# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ANGIE KIELISZEWSKI AND LYNNANN WARE, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br> v.<br><br>RELIAS LLC,<br><br>     Defendant. | Case No. 5:25-cv-00043-M-RN |

**REPLY IN SUPPORT OF RELIAS'S NOTICE OF SUBSEQUENTLY
DECIDED AUTHORITY [D.E. 30]**

# TABLE OF CONTENTS

I. *Holmes* reaffirms *TransUnion*'s core holding: plaintiffs need to point to a concrete injury beyond a mere statutory violation. ............................................... 1

    A. *Holmes* reaffirms that plaintiffs who allege only statutory violations lack Article III standing. ............................................................................... 1

    B. *Holmes* reaffirms that speculative concerns about broader future disclosure cannot create standing............................................................... 3

II. Plaintiffs lack standing because they fail to allege concrete and imminent injury that is traditionally redressed at common law. ........................................... 4

CONCLUSION................................................................................................................ 8

CERTIFICATE OF SERVICE..................................................................................... 10

The Fourth Circuit's recent decision in *Holmes v. Elephant Insurance* supports Defendant Relias LLC's ("Relias") motion to dismiss Plaintiffs' Amended Complaint for lack of standing. No. 23-1782, 2025 WL 2907615 (4th Cir. Oct. 14, 2025); *see* [D.E. 17]. As explained below, that decision reaffirms the core holding of *TransUnion v. Ramirez*, 594 U.S. 413 (2021), and mandates dismissal of this case.

## I. *Holmes* reaffirms *TransUnion*'s core holding: plaintiffs need to point to a concrete injury beyond a mere statutory violation.

### A. *Holmes* reaffirms that plaintiffs who allege only statutory violations lack Article III standing.

In *Holmes*, the Fourth Circuit once again explained that plaintiffs do not have Article III standing to sue simply by alleging that their private information was exposed in violation of a consumer privacy statute. *Holmes*, 2025 WL 2907615, at *3-7. Rather, they must also allege a *concrete* injury analogous to one traditionally redressable by common law. *Id.* Evaluating that injury-in-fact and redressability requires the plaintiff to show a close relationship between the harm alleged and the harm redressed by the historical or common-law analog. *Id.* at *3.

The Fourth Circuit used *TransUnion* as a prime example of the exercise. *See id.* at *3-4. In *TransUnion*, over 6,000 plaintiffs alleged that they had suffered harm sufficiently close to the common-law tort of defamation merely because their credit files contained defamatory information (a misleading OFAC alert). *Id.* at *3. The Supreme Court disagreed. Because those plaintiffs had not alleged a disclosure beyond the credit bureau maintaining their file, the harm they alleged was distinct from that traditionally redressable by common law. *Id.* at *3.

1

"Critically," the Fourth Circuit explained, "this was not because the Court required an element-to-element comparison with defamation." *Id.* at *4. Rather, the lack of dissemination was fatal because broad publication of defamatory information is central to the *harm* redressed by the tort of defamation. "Publication did not matter because it was an element of defamation; it mattered because it helped define the harm of defamation." *Id.* at *4. Talismanic invocation of a common-law analog, in other words, will not meet a plaintiff's burden on standing if the cause of action does not sound in the same principles of injury and redressability.

The Fourth Circuit applied the same rationale to the specific tort at issue in *Holmes*—public disclosure of private facts. *See id.* at *3-10. The *Holmes* court defined the applicable harm as one that occurs when "information that the plaintiff would justifiably prefer to tightly control is released into the open." *Id.* at *6. To be actionable, the information must be "sensitive,"[1] the plaintiff "must have good reason to keep [the sensitive information] close to the vest," and the disclosure "must be accessible to many." *Id.* at *5-6.

As relevant here, two of the plaintiffs in *Holmes* failed to meet those standards. *Id.* at *7. Although their driver's license numbers were compromised in a data breach, the information was disclosed only to the hackers who took it, not in a manner or forum that would be accessible to many. *Id.* Without that broad disclosure, those plaintiffs—like the *TransUnion* plaintiffs who did not allege disclosure beyond

---

[1] At least one other circuit has held more specifically that the public disclosure of private facts applies only to "potentially embarrassing or intimate details." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023).

TransUnion—failed to allege a concrete injury analogous to public disclosure of private information. *Id*. And without that concrete injury, those plaintiffs lacked Article III standing. *Id*.

### B. *Holmes* reaffirms that speculative concerns about broader future disclosure cannot create standing.

In an effort to manufacture standing despite the lack of concrete injury, the plaintiffs in *Holmes* argued that their driver's license numbers may be misused in the future. *See id*. at *10-13. But the Fourth Circuit rejected that theory because the plaintiffs failed to show that "any particular misuse is imminent." *Id*. at *10. "A future harm," the court reasoned, "is not imminent just because there is an 'objectively reasonable likelihood' that it will someday come to pass." *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). Nor will "a speculative chain of possibilities" dependent on "intervening independent decisionmakers … react[ing] in predictable ways" suffice. *Id*. at *12. A plaintiff must show "a substantial risk" that the harm will happen "in the near future." *Id*. at *10; *accord id*. at *11 ("[T]he probability needed for 'substantial risk' is at least 33%—and presumably a good bit higher.").

The harm, moreover, must be specific to the plaintiff's information. Once again applying *TransUnion*, the Fourth Circuit concluded that the dissemination of other individuals' information was not enough to establish imminence. *Id*. at *11. Just because a person's information *could* be disseminated broadly at any moment, and just because *other* individuals' information had been disseminated broadly, does not mean that a particular plaintiff would suffer the same fate. *Id*. at *11-12.

3

The Fourth Circuit, in other words, "has drawn a tighter boundary when it comes to future harms." *Id.* at *13. Claims that hinge on speculative events or that rely on harm befalling others will not suffice. Nor will allegations that raise "only a reasonable probability of future harm" confer standing. *Id.* at *13. Not even "a data breach presents a substantial risk that any one piece of personal information will be misused in the future, even when the plundered information is listed on the dark web." *Id.* To demonstrate the imminence necessary for standing based on future harm, a plaintiff must show a substantial risk that *her specific* information will be broadly disclosed in the near future. *Id.* at *11-13. Because the *Holmes* plaintiffs failed to make that showing, they lacked standing on that theory. *Id.* at *10-13.

Lack of imminence likewise doomed the plaintiffs' claims for remedial efforts and alleged emotional distress. *Id.* at *10-16. "[A]nyone can pay to mitigate anything, however unlikely," just as anyone can "freely allege emotional distress in every case with little fear of disproof." *Id.* at *15. Allowing such claims to confer standing would allow "'an enterprising plaintiff' [to] conjure standing from nothing, 'improperly water[ing] down the fundamental requirements of Article III.'" *Id.* (quoting *Clapper*, 568 U.S. at 416). "[W]hen a future harm is merely speculative, a plaintiff cannot backdoor standing 'simply by making an expenditure [or alleging emotional distress] based on a nonparanoid fear.'" *Id.* (quoting *Clapper*, 568 U.S. at 416).

## II. Plaintiffs lack standing because they fail to allege concrete and imminent injury that is traditionally redressed at common law.

Applying *Holmes* here, the Court should dismiss Plaintiffs' Amended Complaint. That is for two reasons. First, the allegedly private information—

4

continuing education courses that Plaintiffs allegedly placed in their online shopping carts—is not the kind of "sensitive" information that they "have good reason to keep … close to the vest." *Holmes*, 2025 WL 2907615, at *5-6. Pennsylvania law requires Plaintiffs to complete continuing education courses to maintain their status as Pennsylvania-licensed Registered Nurses, a fact Plaintiffs publicly tout. [D.E. 18, at 15-16, 20-22].

Second, like the two plaintiffs in *Holmes* and the thousands in *TransUnion* who lacked standing, Plaintiffs here allege only that the continuing education courses were narrowly disclosed—in this case, to Meta. *See* [D.E. 9 ¶¶ 4-6, 9, 18-20, 28-30, 36, 67-79, 83-99]. That disclosure, moreover, is transmitted through "a snippet of programming code" that embeds the information among a host of other alphanumeric codes. [D.E. 9 ¶ 4 & Figs. 3-b, 3-c, 6]. Relias disputes that such disclosure implicates the Video Privacy Protection Act ("VPPA"). But even assuming it does, that narrow, business-to-business disclosure is not the broad dissemination traditionally redressable by common law. *See Holmes*, 2025 WL 2907615, at *6 (concluding that information must be "released into the open" and that disclosure "must be accessible to many" to be analogous to the public disclosure of private facts); [D.E. 18, at 1-3]. At most, Plaintiffs allegations amount to a statutory violation of the VPPA, not the concrete injury necessary to establish Article III standing under *TransUnion*. [D.E. 18 at 13]; [D.E. 23 at 2-3]; [D.E. 29 at 6-8].

Nor can Plaintiffs establish standing based on a substantial risk of imminent harm (that is, broader disclosure) in the near future. Although Plaintiffs describe in

great detail how *Meta* and *Relias* can use the information obtained through Meta Pixel for advertising and analytics, they do not allege that their video-selection history will be disclosed more broadly. *See* [D.E. 9 ¶¶ 81-82, 89-91, 93, 96]. Their failure in that regard is fatal. Even in the context of a data breach where stolen information has been posted on the dark web, future harm is not automatically imminent. *Holmes*, 2025 WL 2907615, at *12. "[N]o particular piece of personal information is guaranteed to be seen or sold." *Id.* Without allegations showing a substantial likelihood that the information will be seen or sold, "it is unrealistic to assume" that broader dissemination will occur. *Id.* Because Plaintiffs fail to provide any reason to believe that their allegedly private information will be broadcast beyond Meta, any "'risk of dissemination to third parties' [is] 'too speculative' to establish an imminent injury" required for standing. *Holmes*, 2025 WL 2907615, at *11 (quoting *TransUnion*, 594 U.S. at 438).

The Fourth Circuit's decision in *Holmes*—just like its decision in *American Federation of Teachers v. Bessent*, No. 25-1282, 2025 WL 2313244 (4th Cir. Aug. 12, 2025), *pet. for rehearing en banc filed* (Sept. 8, 2025), *see* [D.E. 29]—requires dismissal of Plaintiffs' Amended Complaint.

Plaintiffs' response does not demonstrate otherwise. Plaintiffs argue that two of the plaintiffs in *Holmes* had standing because they alleged a concrete injury—that is, disclosure of their driver's license information to many on the dark web. Conceding the weakness in their own case here, Plaintiffs also recognize that *Holmes* is "factually distinguishable" because "the injuries [there] … are completely different

6

from the allegations in the present case." [D.E. 32, at 2]. Relias agrees. As explained, Plaintiffs have no cognizable privacy interest in the information allegedly disclosed to Meta. [D.E. 18, at 15-16, 20-22]. Even if they did, they failed to articulate any broad public disclosure analogous to the type of concrete harm typically redressed by common law. [D.E. 18, at 17-20]; [D.E. 23, at 7-12]; [D.E. 29, at 9-11].

Nevertheless, Plaintiffs insist that this case is different because Relias intentionally disclosed information about the continuing education videos they placed in their online shopping carts. [D.E. 32, at 2-3]. The Fourth Circuit has already rejected that distinction as irrelevant. *Holmes*, 2025 WL 2907615, at \*8 (rejecting as irrelevant the distinction between active and passive disclosure because "the only elements that matter are the ones that define the harm of the analogous cause of action"). But even assuming the distinction mattered and that Plaintiffs' factual assertion were true, the fact remains that Plaintiffs' purportedly private information was, at most, buried in computer code and disclosed only to Meta. *See* [D.E. 18, at 11-12, 18-19]. As the Supreme Court held in *TransUnion*, and as the Fourth Circuit reiterated in *Bessent*, such a narrow business-to-business disclosure is not sufficiently similar to the public disclosure redressed by common-law torts and does not confer Article III standing. *TransUnion*, 594 U.S. at 434-35; *Bessent*, 2025 WL 2313244, at \*5-6; *accord Holmes*, 2025 WL 2907615, at \*3-4, 6 (applying *TransUnion* and concluding that disclosure must be "to many"); [D.E. 29, at 6-7].

In a final effort to avoid the outcome mandated by *Holmes*, Plaintiffs invite the Court to disregard the Fourth Circuit's decision because that case dealt with a

7

different statute. [D.E. 32, at 1]. Their argument fundamentally misunderstands *Holmes*' core holding, as well as that of *TransUnion* and *Bessent*. Consistent those cases, a plaintiff must at least allege a concrete injury analogous to those traditionally redressed at common law to allege Article III standing. *See Holmes*, 2025 WL 29087615, at *2-7. That holding is binding on this Court, irrespective of whether it was applied to the Driver's Privacy Protection Act, the Video Privacy Protection Act, or any other statute. Plaintiffs' effort to evade that controlling authority based on an immaterial distinction fails.

## CONCLUSION

Plaintiffs have not suffered an injury analogous to public disclosure of private information or another injury traditionally recognized at common law. As such, *Holmes* is controlling authority that confirms that Plaintiffs lack Article III standing and supports dismissal of Plaintiffs' Amended Complaint.

Respectfully submitted, this 6th day of November, 2025.

          SMITH, ANDERSON, BLOUNT,
          DORSETT, MITCHELL & JERNIGAN,
          L.L.P.

          */s/ H. Hunter Bruton*
          H. Hunter Bruton
          North Carolina State Bar No. 50601
          David A. Senter, Jr.
          North Carolina State Bar No. 44782
          C. Michael Anderson
          North Carolina State Bar No. 42646
          Samantha B. Taylor
          North Carolina State Bar No. 56609

          Post Office Box 2611
          Raleigh, North Carolina 27602-2611
          Telephone:   (919) 821-1220

Facsimile: (919) 821-6800
hbruton@smithlaw.com
dsenter@smithlaw.com
manderson@smithlaw.com
staylor@smithlaw.com

*Counsel for Relias LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I electronically filed the above with the Clerk of Court using the CM/ECF System, which will provide electronic copies to counsel of record.

*/s/ H. Hunter Bruton*